IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| ANDREW BLOWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 1:15-cv-889-GBL-MSN |
| | ) | |
| ANDREW S. LERNER, ESQ., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT & RECOMMENDATION

This matter is before the Court on Defendants' Motion for Sanctions Pursuant to 28 U.S.C. § 1927 (Dkt. No. 69), brought against Plaintiff's former counsel Ernest P. Francis. Also before the Court is Mr. Francis' Motion for Rule 11 Sanctions (Dkt. No. 74), brought against Defendants on the grounds that Defendants' Motion is frivolous.

For the reasons that follow, the undersigned Magistrate Judge recommends granting Defendants' Motion for Sanctions Pursuant to 28 U.S.C. § 1927 and denying Mr. Francis' Motion for Rule 11 Sanctions. Plaintiff's sworn testimony establishes that Mr. Francis litigated this case unilaterally, making substantive decisions regarding the course of this litigation without the knowledge or consent of his client. Among other things, Mr. Francis withheld a settlement offer from his client that would have brought this litigation to an early conclusion because Mr. Francis felt the offer did not include adequate attorney's fees. As a result, this case progressed well beyond the point at which Plaintiff had any interest in pursuing it. Mr. Francis thus "multiplie[d] the[se] proceedings . . . unreasonably and vexatiously" within the meaning of § 1927. Accordingly, Defendants are entitled to recover from Mr. Francis reasonable costs and fees incurred as a result of his conduct.

## I.    Background

Defendants are attorneys who represented American Express Centurion Bank in a debt collection action against Plaintiff. On October 9, 2014, Defendants filed suit against Plaintiff in the Fairfax County Circuit Court to recover a debt of approximately $40,000 owed on Plaintiff's credit card. Compl. (Dkt. No. 1) ¶¶ 7, 27-28. When Plaintiff failed to respond, Defendants moved for default judgment. *Id*. ¶ 13. Mr. Francis entered an appearance on Plaintiff's behalf in the Fairfax Circuit Court on December 31, 2014, and opposed Defendants' motion for default judgment at a hearing held January 9, 2015. *See* Opp. to Mot. for Partial Summary Judgment Exh. B (Dkt. No. 30-1). Based on Plaintiff's testimony that he had not seen a summons attached to the complaint with which he was served, the Circuit Court held that it could not enter default judgment against him. *See id*. at 41.

On July 9, 2015, Mr. Francis filed the instant suit against Defendants, allegedly on Plaintiff's behalf, asserting violations of the Fair Debt Collection Practices Act ("FDCPA"). The claims raised here relate to the proceedings in Fairfax County and are based, in part, on Defendants' purported failure to properly serve Plaintiff with a summons before seeking default judgment against him. The Complaint alleges that as a result of Defendants' conduct in the Fairfax County case, Plaintiff incurred $50,000 in "actual and statutory damages."

On September 29, 2015, Plaintiff declared bankruptcy and the proceedings in Fairfax Circuit Court were stayed. *See* Notice Exh. A (Dkt. No. 89-1) ("Depo. Tr.") at 100; Hrg. Audio 11:28:42. The case in this Court, however, proceeded without interruption, with a settlement demand propounded by Mr. Francis on September 24, 2015, a counteroffer by Defendants on September 30, 2015, briefing on a motion for partial summary judgment, and numerous collateral disputes instigated by Mr. Francis. Most notably, Mr. Francis aggressively opposed the

admission pro hac vice of Defendants' counsel based in part on his use of a single curse word during a telephone call. *See* Opp. to Mot. to Appear Pro Hac Vice (Dkt. No. 46); Mot. to Vacate Order on Pro Hac Vice (Dkt. No. 49); Mot. to Withdraw as Attorney (Dkt. No. 56); Hrg. Audio 11:34:25 ("I'm going to oppose the application, bar application of somebody who uses profanity in a conversation with me. Yes, I'm going to do that."). The curse word in question was not directed at Mr. Francis, but was used to describe a third party—general counsel at Defendants' firm—with whom Mr. Francis had spoken earlier in the case.[1]

On January 12, 2016, this case came to an abrupt halt at Plaintiff's deposition. Plaintiff testified that he had no contact with Mr. Francis throughout the instant litigation, had suffered no harm that would justify this litigation, did not want the relief sought in this litigation, and had no interest in pursuing this litigation. The deposition ended with Plaintiff discharging Mr. Francis and agreeing to settle the case in exchange for Defendants' promise that they would not seek fees or costs from him.

---

[1]     The term was "a**hole." *See* Opp. Exh. B (Dkt. No. 83-1). The parties dispute the timing of the conversation in question relative to Mr. Francis' decision to oppose the pro hac vice application. *See* Mem. in Supp. of Mot. to Supplement the Record (Dkt. No. 92). Mr. Francis now appears to concede Defendants' position, but claims that when the conversation occurred is irrelevant as Defendants' counsel's "filthy mouth . . . is not consistent with [the Court's] 'high standards of professionalism.'" Opp. (Dkt. No. 95) at 1. Mr. Francis also now claims that his opposition to the pro hac vice application was based "far more" on Defendants' service upon him of a proposed motion for Rule 11 sanctions, which Defendants never filed. *Id*. at 2. The attorney whose pro hac vice application Mr. Francis opposed, however, did not sign that proposed motion for Rule 11 sanctions, *see* Exh. to Br. in Supp. of Rule 11 Sanctions (Dkt. No. 76), and appears to have had very little to do with its preparation and service upon Mr. Francis. Regardless of Mr. Francis' primary rationale, the Court has already found both grounds for opposing the pro hac vice application to be meritless. *See* Order (Dkt. No. 60).

### A.      Plaintiff's Testimony

Plaintiff's deposition took place in Denver, Colorado, with Mr. Francis appearing, at his election, by telephone. Mr. Francis has not contested Plaintiff's testimony in any material respect and has in fact personally confirmed some of Plaintiff's statements.

Defendants' Motion rests primarily upon testimony that Mr. Francis failed to consult with Plaintiff during the pendency of this case, which Defendants allege led to unnecessary and vexatious multiplication of these proceedings. Plaintiff testified at his deposition that he did not speak with Mr. Francis at all from the filing of the Complaint in this matter until the week before Plaintiff's deposition on January 12, 2016:

> Q. Certainly in the last few months you've had occasion to confer with your attorney, Mr. Francis, correct?
> MR. FRANCIS: You can answer whether you've conferred. Do not discuss anything about the substance of any communication you had with me or any other attorney, for that matter.
> A. I spoke with Mr. Francis a couple days ago.
> Q. (BY MR. NEWBURGER) And before that when was the last time you spoke with Mr. Francis?
> A. I don't remember.
> Q. Would it have been in the last few months?
> A. No, I don't believe I spoke to him in the last few months.
> Q. Do you think you've spoken with him since --
> A. One time.
> Q. Only one time ever you've spoken with him?
> A. Since -- well, since this.
> Q. Since the answer was filed?
> A. Yes.
> Q. When was that?
> A. A couple weeks ago or a week ago, two weeks ago, last week.
> Q. So between the date suit was filed and just a few weeks ago you've never communicated with Mr. Francis?
> A. No.
> MR. FRANCIS: Object to the form.
> What do you mean by suit was filed, which suit?

4

Q. (BY MR. NEWBURGER) Since the date the state court suit -- let me scratch that and start over. Since the date the federal court suit was filed have you spoken with Mr. Francis?

A. Not that I remember.

Q. Okay. Other than a few weeks ago? Other than a few weeks ago, correct?

A. Correct.

MR. FRANCIS: I object. I think that's mischaracterizing the Witness' testimony. I think he said it was last week.

Depo. Tr. 50-51.[2]

Mr. Francis' failure to communicate with his client was not merely an oversight. For example, Defendants moved for partial summary judgment based on a recorded telephone conversation during which Plaintiff represented to Defendants' firm that he had, in fact, received a summons in the Fairfax County case. Without consulting with his client, Mr. Francis submitted an opposition to that Motion claiming no such telephone call ever took place, characterizing the call as "a recent fabrication." *See* Opp. (Dkt. No. 30) at 6. Plaintiff testified at his deposition, however, that the telephone call had indeed taken place:

---

[2]     At the hearing held on this matter, Mr. Francis stated that he had "communications on . . . two dates" with Plaintiff before January of 2016: once the day he was retained in connection with the Fairfax County matter, and again the day *after* he filed the Complaint in this case, which was also the date of Plaintiff's deposition in the Fairfax County case. Hrg. Audio 11:05:10. Mr. Francis did not specify whether he was referring to communications regarding settlement—the topic under discussion at the time—or total substantive discussions with his client. The record tends to support the latter understanding of Mr. Francis' remarks. Indeed, when Defendants' counsel expressed this understanding of Mr. Francis' remarks at the hearing, Mr. Francis did not correct him. *See* Hrg. Audio 11:39:00 ("I take counsel's representations regarding his communications with his clients at their face, I don't see any reason to disbelieve them. But according to him he spoke to his client six months before filing, approximately, a day after he filed, and then a week or so before the deposition. . . . I think that testimony speaks for itself."). This raises serious concerns that Plaintiff never had any interest in this litigation. Such concerns are bolstered by Mr. Francis' representation agreement with Plaintiff, submitted as Exhibit A to Mr. Francis' Declaration, which purports to reserve to Mr. Francis the right to initiate litigation like the present case in Plaintiff's name. *See* Francis Decl. Ex. A (Dkt. No. 94-1). Regardless of what Mr. Francis intended by his remark, the undersigned finds that his undisputed failure to consult with Plaintiff during the pendency of this litigation is amply sufficient to warrant sanctions under § 1927.

> Q. You told Zwicker & Associates that you had received the summons?
> A. Yes.
> Q. You did that unequivocally, didn't you?
> A. Yes.
> Q. And it's reasonable for them to believe that you were served with the summons given the fact that you told them that, correct?
> A. Yes.

Depo. Tr. 45-46; *see also* Audio Recording: Telephone Conversation Between Plaintiff and Defendants' Firm (Oct. 16, 2014) (On file with Clerk of the Court) at 9:28 (Mr. Glazebrook: "I understand that you're aware there's a suit [that's] been filed on the account, correct?" Plaintiff: "Yes, I'm aware." Mr. Glazebrook: "And you received the summons already?" Plaintiff: "I got it yesterday."). Mr. Francis has since admitted that he chose not to confirm Defendants' allegations with his client and to—in his words—"ignore Defendants' allegations entirely and instead present the Court with only the evidence that was favorable." Opp. (Dkt. No. 83) at 10. The undersigned notes that on July 28, 2015—more than four months before Mr. Francis made the above representations to the Court—Defendants informed Mr. Francis that they possessed a recording of this conversation. *See* Francis Decl. Exh. B. (Dkt. No. 94-1); *see also* Df. Mot. for Sanctions Exh. C (Dkt. No. 71-1).[3]

More troubling, however, is Plaintiff's testimony that Mr. Francis litigated this matter unilaterally, usurping Plaintiff's role in these proceedings. Plaintiff's testimony establishes that Mr. Francis, for example, prepared the Complaint filed in this matter without consulting with

---

[3]     This is relevant to the analysis not because, as Defendants argue, Mr. Francis would have necessarily discovered that the claims against Defendants were baseless. Rather, it demonstrates Mr. Francis' failure to honor his obligation to consult with his client in the knowledge that this could result in perpetuating baseless litigation.

Plaintiff. *See* Depo. Tr. 53, 56-57.[4] In doing so, Mr. Francis—to put it mildly—greatly overestimated Plaintiff's damages. Indeed, Plaintiff testified that he suffered *no* injury of any kind as a result of Defendants' conduct in the Fairfax County litigation, and that he didn't "have any idea" how the $50,000 figure cited in the Complaint was calculated:

> Q. So nothing about the subpoena served on you by the defendants caused you any economic harm or mental anguish, right?
>
> A. Correct.
>
> …
>
> Q. Okay. Let's talk about damages.
>
> A. Okay.
>
> Q. Are you claiming that Andrew Lerner or Greg Walz caused you any economic damages?
>
> A. No.
>
> …
>
> Q. Do you see where it says, "Wherefore, Plaintiff prays for judgment against Defendants for damages in the amount of $50,000, including actual and statutory damages, plus the reasonable attorney's fees incurred in this action, together with prejudgment interest and the costs of this action"?
>
> A. Yeah, I see that.
>
> Q. Do you have any idea how $50,000 in damages was calculated?
>
> A. No.
>
> Q. You've already told me you've got no mental anguish damages, right?
>
> A. Correct.
>
> Q. You've got no out-of-pocket losses other than your airfare?
>
> A. Correct.

---

[4]     When asked at his deposition if he had seen the Complaint in the instant suit before, Plaintiff said that he was shown the Complaint during his deposition in the Fairfax County case on July 10, 2015—the day *after* the Complaint was filed. Depo. Tr. 53, 56. Plaintiff testified that he did not remember reviewing the Complaint before that date. Depo. Tr. 53. Plaintiff was unable to remember precisely when he became "aware of the fact that [he] had th[is] lawsuit pending." Depo. Tr. 56.

Depo. Tr. 76, 81-83.[5]

Plaintiff similarly testified that he had not authorized a settlement demand propounded by Mr. Francis which requested $30,000 from Defendants to settle the case—a figure comprising $5,000 in damages, $5,000 for a confidentiality provision, and $20,000 in attorney's fees. Depo. Tr. 100; Francis Decl. Exh. B. (Dkt. No. 94-1). Plaintiff's deposition testimony makes clear that he would not have found settlement on these terms to be acceptable. *See* Depo. Tr. 104-05. As to Mr. Francis' claimed $20,000 in attorney's fees, Plaintiff stated that the total fees he had incurred in the Fairfax County action and this litigation amounted to $3,000, which he had already paid to Mr. Francis. Depo. Tr. 69.[6]

For purposes of Defendants' Motion, however, Plaintiff's most important testimony concerned Mr. Francis' failure to convey a settlement offer propounded by Defendants on September 30, 2015:

---

[5]   At the hearing on this matter, Mr. Francis claimed that his client's statement at the deposition that "[t]his whole thing has caused me mental anguish," Depo. Tr. 73, creates a material issue of fact as to whether Mr. Francis invented Plaintiff's alleged damages. *See* Hrg. Audio 11:21:48. Plaintiff, however, appears to have been referring to his situation more broadly—the fallout from his inability to pay his debts. When asked about Defendants' conduct specifically, Plaintiff very clearly and repeatedly stated that Defendants caused him no mental anguish. *See* Depo. Tr. 74-80.

[6]   In responding to the allegation that he had greatly inflated his fees in making the unauthorized settlement demand, Mr. Francis at first insinuated that Plaintiff had been mistaken about the amount due him, and that he had not inflated his fees. *See, e.g.*, Opp. (Dkt. No. 83) at 13; Hrg. Audio 10:53:35 ("They've stated that their firm incurred . . . tens of thousands of dollars in legal fees. Where's their fee agreement? They say I haven't produced mine, where's theirs? . . . They're saying I can't claim $20,000 in attorney's fees because I didn't provide a fee agreement. . . . I just want the same principle applied to the other side of the aisle. . . . If they're claiming fees without releasing a fee agreement, I should be able to claim fees without—and when I say claim fees I'm talking about the $20,000 [demand]."). In the email making the unauthorized demand, however, Mr. Francis represented that the figure was his "standard" demand in FDCPA cases, as he had "no time to do 'customized' demands." Francis Decl. Exh. B. (Dkt. No. 94-1). When pressed at the hearing held on this matter, Mr. Francis conceded that the demand was based on estimated future fees that he would have earned in this case. Hrg. Audio 10:55:48.

Q. (BY MR. NEWBURGER) Have you ever seen that exhibit prior to today, that is, Exhibit 11 --

A. No.

Q. -- a letter on my letterhead?

A. No.

Q. Were you aware of the fact that an offer of settlement was made to you in the amount of $1,100 plus your attorney's fees and costs?

A. No.

Q. Did you ever authorize rejection of that offer?

A. I've never seen or heard any of this before, no.

Q. Did you ever authorize Mr. Francis to reject that offer?

A. I did not.

Q. And Mr. Francis never conveyed that offer to you?

A. No.

MR. FRANCIS: Objection. You're getting into privileged information. Don't answer that.

Q. (BY MR. NEWBURGER) I'll ask it differently. Until this moment you have never had any knowledge of the offer made in Exhibit 11; is that correct?

A. That's correct.

Depo. Tr. 101-02.[7] The September 30, 2015 settlement offer stated that Defendants were "willing to pay the total sum of $1,100.00 plus the reasonable fees and costs incurred in this action, in full settlement of this matter." Df. Mot. for Sanctions Exh. C (Dkt. No. 71-1). When asked whether he would have accepted this offer had it been conveyed to him, Plaintiff said that he wouldn't have accepted—but only because the offer was too generous:

Q. Okay. Then I'm asking you to tell me why it is you would not have accepted that offer.

A. I did not accept that offer --

---

[7]    While this settlement offer is the primary subject of Defendants' Motion, this was in fact the second offer Mr. Francis failed to convey to his client. On July 28, 2015, general counsel for Defendants' law firm offered $3,500 to settle the case in an email to Mr. Francis. *See* Francis Decl. Exh. B (Dkt. No. 94-1). Mr. Francis rejected the offer, dismissively referring to it as a "joke." *Id*. As discussed above, Plaintiff testified that Mr. Francis had no communications with him between the filing of the Complaint and January of 2016. As a result, Mr. Francis could not have conveyed the July 28, 2015 offer or consulted with Plaintiff before rejecting it.

9

MR. FRANCIS: And I'm saying don't answer that.

DEPONENT: Ernest, I'm going to answer.

A. This is unfair. This isn't right. I owed them a debt, simply put.

Q. (BY MR. NEWBURGER) And you weren't trying to take unfair advantage?

A. No, no, no.

Q. And that's really the reason you didn't list the lawsuit [as an asset when declaring bankruptcy], because you didn't --

A. I didn't understand.

Q. Let me finish the question. The reason you didn't list the lawsuit is because you didn't really think you had a claim against anyone, do you?

A. That's correct.

Q. You had a debt and people asked you to pay it and they sued you on the debt that you agree you owed, right?

A. That's correct.

Q. And you don't really want any money from the defendant, do you?

A. No.

Depo. Tr. 104-05. Shortly after this exchange, Defendants' counsel made another settlement offer addressed to Mr. Francis in Plaintiff's presence: if Plaintiff would agree to dismiss the case with prejudice before the end of the deposition, Defendants would "not seek fees against [Plaintiff] for this litigation." Depo. Tr. 106. Plaintiff responded by firing Mr. Francis and immediately accepting the offer:

Q. (BY MR. NEWBURGER) Mr. Blowers, do you want me to step out so you can confer with your attorney?

A. No, I'd like this dismissed and withdrawn immediately.

MR. NEWBURGER: Am I to -- I can only go through your attorney. Mr. Francis, am I to take that as an acceptance of the offer just made?

MR. FRANCIS: No. If my client wants to discharge me, he can communicate that to me and I'll take appropriate action.

MR. NEWBURGER: Until he says you are discharged, I cannot communicate with him.

THE DEPONENT: Ernest, I would like to discharge you at this

time. I'd like this case dropped and withdrawn.

    MR. FRANCIS: Okay. Then I will need to move to file a motion to withdraw at this point.

    Q. (BY MR. NEWBURGER) Mr. Blowers, are you accepting the offer that was made --

    A. Yes.

    Q. -- on the record?

Depo Tr. 107-08.

## B.    The Present Proceedings

Mr. Francis moved to withdraw from his representation of Plaintiff the day after the deposition, while seeking to remain in the case solely for purposes of further contesting Defendants' counsel's application for admission pro hac vice. *See* Mot. to Withdraw (Dkt. No. 56). Defendants consented to Mr. Francis' withdrawal on the condition that the Court retain jurisdiction over Mr. Francis so as to permit Defendants to pursue sanctions under § 1927 against him. *See* Response (Dkt. No. 61). The Court granted Mr. Francis' Motion to Withdraw and retained jurisdiction over him for 180 days. *See* Order (Dkt. No. 65).

Shortly thereafter, on February 5, 2016, Defendants filed the present Motion for Sanctions Pursuant to 28 U.S.C. § 1927. Defendants' Motion argues that Mr. Francis' conduct in this litigation, as described in the sworn testimony of his own client, unreasonably and vexatiously multiplied these proceedings. Defendants also cite Mr. Francis' incivility toward Defendants and opposing counsel—including Mr. Francis' numerous threats of bar complaints directed at both—as further grounds for their Motion.

In response, Mr. Francis not only opposed Defendants' Motion but filed his own Motion for Sanctions Under Rule 11, claiming that Defendants' Motion is frivolous. Mr. Francis also moved to suppress Plaintiff's deposition. *See* Mot. to Suppress (Dkt. No. 78). The undersigned

denied the latter Motion as legally unsupported. *See* Hrg. Audio 10:24:00.[8]

On February 19, 2016, the undersigned held a two-hour oral argument, at which the parties were permitted to argue their Motions at length. At the conclusion of that hearing, the undersigned granted both parties leave to supplement the record in light of the gravity of this matter. *See* Order (Dkt. No. 88). The undersigned also raised the possibility that Mr. Francis could obtain from Plaintiff a waiver of attorney/client privilege as to pertinent client communications, or move for an evidentiary hearing at which Mr. Francis would have an opportunity to cross-examine Plaintiff if he believed the record was incomplete. Hrg. Audio 11:47:56. Instead, Mr. Francis submitted a Supplemental Declaration (Dkt. No. 94).

### C.   Mr. Francis' Declaration

Mr. Francis' Declaration is largely dedicated to explaining his failure to convey Defendants' settlement offer to Plaintiff. First, Mr. Francis states that there existed an "understanding between [Mr. Francis] and [Plaintiff] as to settlement discussions . . . that no settlement offer from an opposing party would be accepted unless it provided for payment in full of attorney's fees incurred in the defense of the Fairfax County Action." Francis Decl. (Dkt. No. 94) ¶ 7. As the settlement offer propounded by Defendants did not include fees related to the Fairfax County matter, Mr. Francis claims that he was not required to convey it to Plaintiff due to this "understanding." *See id.* ¶¶ 7, 12; Df. Mot. for Sanctions Exh. C (Dkt. No. 71-1). Mr. Francis claims further that his "practice is to present settlement offers to clients when the offer is in the form of an agreement that my client can sign in order to create contractual liability

---

[8]   The undersigned granted Mr. Francis leave to file this unusual motion on the condition that it "be legally well grounded," and stated if the motion lacked legal support this would be considered "in evaluating Defendants' Motion for Sanctions." *See* Order (Dkt. No. 73). While Mr. Francis failed to heed this warning, the undersigned finds it unnecessary to consider Mr. Francis' Motion to Suppress given the weight of evidence favoring sanctions.

for the other party." Francis Decl. (Dkt. No. 94) ¶ 19. Because the settlement offer from

Defendants came in the form of an email rather than a contract, Mr. Francis avers he viewed it as

"simply a preliminary negotiation." *Id*. Notably, Mr. Francis appears to concede that he did not

speak to Plaintiff during the pendency of this litigation until a week before Plaintiff's deposition.

*See id*. ¶¶ 10, 20-22.[9]

## II.   Analysis

28 U.S.C. § 1927 states that

> Any attorney or other person admitted to conduct cases in any
> court of the United States or any Territory thereof who so
> multiplies the proceedings in any case unreasonably and
> vexatiously may be required by the court to satisfy personally the
> excess costs, expenses, and attorneys' fees reasonably incurred
> because of such conduct.

The law's primary aim is "remedying abuse of court process." *Stradtman v. Republic Servs., Inc.*,

No. 1:14-cv-1289, 2015 WL 4668402, at *2 (E.D. Va. Aug. 5, 2015). "Section 1927 focuses on

the conduct of the litigation and not on its merits." *DeBauche v. Trani*, 191 F.3d 499, 511 (4th

Cir. 1999). "Thus, an attorney who files a meritorious claim and wins a substantial verdict may

still be assessed sanctions under § 1927 if, during the case, he 'multiplies the proceedings . . .

unreasonably and vexatiously," while "an attorney who files a meritless claim may not be

sanctioned under § 1927 if he does not engage in such conduct." *Id*. One way in which an

---

[9]      Mr. Francis states in his Declaration that "[i]n preparation for his deposition, I also spoke
with Mr. Blowers regarding settlement negotiations so as to advise him as to direction in which
the case was proceeding, and at no time did he indicate to me that he wanted to accept the offer
contained in the September 24 letter." Francis Decl. (Dkt. No. 94) ¶ 22. The "September 24
letter," however, is the $30,000 demand Mr. Francis made upon Defendants rather than
Defendants' September 30, 2015 settlement offer. *See id*. ¶¶ 12, 14. Mr. Francis therefore
appears to confirm that Plaintiff had no interest in the settlement Mr. Francis proposed to Defendants.
Moreover, the record shows that Mr. Francis' conversation "regarding settlement
negotiations" with Plaintiff did not specifically address the offers already made and rejected
without Plaintiff's knowledge, as Plaintiff testified that he first heard of these offers at his
deposition.

attorney may "multipl[y]" proceedings within the meaning of § 1927 is to maintain an action beyond the point at which it should have been dismissed. *See Salvin v. Am. Nat. Ins. Co.*, 281 F. App'x 222, 225-26 (4th Cir. 2008).

A "finding of counsel's bad faith [i]s a precondition to the imposition of fees." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991). Although the Fourth Circuit has yet to rule definitively on the issue, *see Salvin*, 281 F. App'x at 225 (reserving the question), the Eastern District of Virginia has consistently interpreted "bad faith" to mean "objective" rather than "subjective" bad faith, which "does not require malice or ill will; 'reckless indifference to the law will qualify. If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.'" *Stradtman*, 2015 WL 4668402, at *3 (quoting *Collins v. Dollar Tree Stores, Inc.*, No. 2:09-cv-486, 2010 WL 9499078, at *3 (E.D. Va. May 28, 2010)); *see also Braley v. Campbell*, 832 F.2d 1504, 1511-12 (10th Cir. 1987) (adopting an objective "recklessness" standard of bad faith and listing supporting cases). The Fourth Circuit has further suggested that "[b]ad faith" can be inferred from multiple instances of misconduct unbecoming "an officer of the court." *Blair v. Shenandoah Women's Ctr., Inc.*, 757 F.2d 1435, 1438 (4th Cir. 1985).

### A.     Conduct Warranting Sanctions Under § 1927

Mr. Francis does not contest the facts set forth above in any material respect. This is so notwithstanding the undersigned's express invitation to Mr. Francis to supplement the record, and to secure the Court's aid in cross-examining Plaintiff if need be. Instead, Mr. Francis has conceded the essential facts underlying Plaintiff's testimony. This being so, the undersigned finds that Mr. Francis' actions in this case warrant sanctions under § 1927.

The record establishes that from the day after this lawsuit was filed on July 10, 2015, to

mid-January of 2016, Mr. Francis neglected to consult with his client regarding any aspect of this litigation. Depo. Tr. 50-51. During that time, Mr. Francis undertook to litigate this case unilaterally, making substantive decisions regarding this matter without his client's knowledge or consent. Those decisions included the unauthorized rejection of two settlement offers, *see* Depo. Tr. 101-02; Francis Decl. Exh. B (Dkt. No. 94-1), the proffer of an unauthorized settlement demand, *see* Depo. Tr. 100; Francis Decl. Exh. B. (Dkt. No. 94-1), and the submission to the Court of filings containing factual representations that Mr. Francis had reason to believe to be false. *See* Depo. Tr. 45-46, 76, 81-83; Francis Decl. Exh. B. (Dkt. No. 94-1); Opp. (Dkt. No. 83) at 10. The undersigned notes that, as discussed more fully in Section II(C) *infra*, Mr. Francis further used this litigation as a platform for personal attacks on Defendants and their attorneys through filings that lacked both sound legal basis and "the civility and professional courtesy expected of attorneys practicing in this Court." Order (Dkt. No. 60).

Plaintiff's sworn testimony establishes that as of at least September 30, 2015, Plaintiff did not desire the relief sought in his Complaint and would not have accepted any remuneration from Defendants. *See* Depo. Tr. 104-08. On that date, Defendants extended to Plaintiff a settlement offer that exceeded what Plaintiff deemed to be equitable terms. *See* Depo. Tr. 102-08. Mr. Francis unilaterally rejected that offer without his client's knowledge or consent. *See* Depo. Tr. 101-02. When later presented with a less favorable offer, Plaintiff was so eager to accept it that he discharged Mr. Francis when Mr. Francis refused to cooperate with Plaintiff in settling the case. *See* Depo. Tr. 107-08.

In short, Plaintiff's sworn testimony establishes that this acrimonious litigation could have been avoided had Mr. Francis adequately communicated with his client. Instead, Mr. Francis arrogated to himself decisions reserved to Plaintiff and pursued this litigation

unilaterally beyond the point at which his client had any interest in it.

Because Plaintiff's testimony makes clear that this litigation should not have progressed beyond Defendants' September 30, 2015 settlement offer, Mr. Francis' failure to convey that offer serves as a focal point that brings his broader failure to communicate with his client into sharp relief—a moment at which the record clearly shows both that Plaintiff desired no recovery, and that Mr. Francis was duty-bound to make contact with Plaintiff to convey Defendants' offer. In short, it marks the point at which any responsible attorney would have discovered that this litigation should have ended. Proceedings beyond that point were thus "multiplie[d]" within the meaning of § 1927 as a result of Mr. Francis' conduct. *See Salvin*, 281 F. App'x at 226 (attorney's actions "multiplie[d]" proceedings under § 1927 when they unnecessarily "protracted the litigation").

There can be little doubt that as of that date Mr. Francis' conduct also became "unreasonabl[e] and vexatious[ ]." As Mr. Francis acknowledged at the hearing on this matter, *see* Hrg. Audio 10:59:30, the responsibility to convey offers of settlement to clients is one of an attorney's most important duties. *See, e.g.*, *Rizzo v. Haines*, 520 Pa. 484, 500 (1989) ("Consistent with ordinary skill and knowledge, it [is] incumbent upon [an attorney], as a matter of law, to communicate all settlement offers to his [or her] client."); *see also id.* (listing cases). This is not simply a matter of legal ethics, but "a duty which a lawyer owes to his adversaries and the court as well as his clients." *Deadwyler v. Volkswagen of Am., Inc.*, 134 F.R.D. 128, 140 (W.D.N.C. 1991), *aff'd sub nom. Moore v. Volkswagen of Am., Inc.*, 966 F.2d 1443 (4th Cir. 1992).

Given the weight and clarity of this obligation, Mr. Francis' failure to convey Defendants' settlement offer demonstrated "reckless indifference to the law," and conduct "that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound."

16

*Stradtman*, 2015 WL 4668402, at *3.[10] Indeed, failure to convey a settlement offer has served as

the basis for § 1927 sanctions under circumstances far less compelling than those presented here.

For example, in *Deadwyler v. Volkswagen of America, Inc.*, the plaintiffs' attorney likewise

failed to convey a settlement offer to his clients. Even absent an apparent basis to believe that the

offer would have led to the resolution of the case—a circumstance clearly presented here—the

court found:

> Two of the statutory requirements of 28 U.S.C.A. Section 1927,
> multiplication of proceedings and excess costs, expenses and
> attorney fees, are self-evidently present in this case. Therefore, if
> Defendants are correct in their contention that an attorney failing to
> communicate substantial offers of settlement acts "unreasonably
> and vexatiously" under 28 U.S.C.A. Section 1927, the statute is
> clearly applicable. However, the precise standard to apply is not
> critical where the conduct at issue meets even the strictest
> requirements. That is the case here. No type of misbehavior by an
> attorney is more universally and categorically condemned, and is
> therefore more inherently in "bad faith," than the failure to
> communicate offers of settlement.

134 F.R.D. at 140*; see also Abraham v. Volkswagen of Am., Inc.*, No. 90-cv-725, 1991 WL

89917, at *6 (W.D.N.Y. Mar. 11, 1991) (concurring with *Deadwyler*'s analysis and imposing

---

[10]     Mr. Francis cites *Stradtman* for the proposition that the Court must hold that he acted
with the specific intent to "run up [Defendants'] costs" in order to make a finding of "bad faith"
under § 1927. Opp. (Dkt. No. 83) at 2; Hrg. Audio 10:58:45 ("The bad faith that the Court has to
find is bad faith in term of an intent solely to increase the costs . . . and expenses of the other
side."). This, however, ignores *Stradtman*'s thorough explanation of the "bad faith" standard as
an "objective" rather than "subjective" standard met by "reckless" behavior that has the effect of
multiplying litigation. *See* 2015 WL 4668402, at *3. It is also inconsistent with Fourth Circuit's
holding in *Salvin*, 281 F. App'x at 225, that even if a "subjective" standard applied under
§ 1927—a question the Court reserved—that standard would be met by an attorney's knowing
prosecution of a case beyond the point at which it should have been dismissed, irrespective of
any specific intent to increase the opposing party's costs. Regardless, as discussed below in
Section II(B), Mr. Francis' conduct here would easily satisfy even a "subjective" standard of
"bad faith."

§ 1927 sanctions on the same attorney for the same conduct).[11] As the *Deadwyler* court notes, "much less egregious conduct interfering with settlement—mere foot-dragging in formally consummating an agreement—has been sanctioned under the 'bad faith' reading of 28 U.S.C.A. Section 1927." 134 F.R.D. at 140 (citing *Forman v. Mt. Sinai Medical Center*, 128 F.R.D. 591, 605-06 (S.D.N.Y.1989)); *cf. Vesco v. Snedecker*, 236 F. Supp. 2d 1272, 1274 (D.N.M. 2002) (imposing § 1927 sanctions where attorney "opposed an early settlement of the case, against the insistence and express wishes of his client, in order to further his own financial self-interest").

As contrary authority, Mr. Francis cites *Abrams v. Ciba Specialty Chemicals Corp.*, No. 08-cv-0068, 2009 WL 4667126 (S.D. Ala. Dec. 2, 2009). That case, however, addressed a situation much different than that now before the Court. In *Abrams*, the plaintiffs' attorneys conveyed a settlement offer to each of their 250 clients, and after "communicat[ing] with every single client," rejected it. *Id*. at *6 n.9. The defendants then proposed another settlement with only minor changes that both the plaintiffs' attorneys and the court deemed immaterial. *See id*. Accordingly, the plaintiffs' attorneys declined to convey it. *See id*. The court held that the plaintiffs' attorneys could not "be sanctioned [under § 1927] for not conducting town-hall meetings or individual consultations with their 250 clients to discuss settlement offers that would not change previously-rejected per-plaintiff payouts in the slightest." *Id*.

In contrast to *Abrams*, Mr. Francis never conveyed the material terms of Defendants'

---

[11]    Mr. Francis attempts to distinguish *Deadwyler*'s holding as limited to attorneys in class actions based on the court's acknowledgement that the class counsel in that case bore responsibilities "beyond that owed by a lawyer to an individual client." 134 F.R.D. at 139. The *Deadwyler* opinion, however, goes out of its way to explain that failure to convey a settlement offer is among the most "universally and categorically condemned" forms of attorney malfeasance, such that "[i]n the malpractice field, failure to communicate settlement offers is among the few types of misconduct of such a self-evident nature that expert testimony is not required to establish its improper character." *Id*. at 140. The case cannot fairly be read in the limited manner Mr. Francis suggests.

settlement offer to Plaintiff, or even apprised Plaintiff of the existence of the offer. Similarly, Mr. Francis would not have had to "conduct[ ] [a] town-hall meeting[ ]" to share Defendants' offer, but merely maintain the degree of client communication commensurate with his professional obligations. There is, in short, nothing in *Abrams* that supports Mr. Francis' position.

In addition to the above, Mr. Francis' opposition to Defendants' Motion puts forth several other arguments as to why his failure to convey Defendants' settlement offer cannot serve as the basis for § 1927 sanctions in this instance. None of these arguments withstands scrutiny.

First, Mr. Francis argues that Defendants' September 30, 2015 proffer was "too indefinite to be a settlement offer" because "Defendants' letter left a material term—the amount of attorney's fees—still to be negotiated." Opp. (Dkt. No. 83) at 4-5. The letter in question stated that Defendants were "willing to pay the total sum of $1,100.00 plus the reasonable fees and costs incurred in this action, in full settlement of this matter." Df. Mot. for Sanctions Exh. C (Dkt. No. 71-1). It further explained that Defendants would pay Mr. Francis' fees up to and including $1,500.00 without the need for Mr. Francis to furnish his time records, and offered to submit to the Court the amount of Mr. Francis' attorney's fees if a dispute arose as to its reasonableness. *See id*. Mr. Francis' claim that this offer was not sufficiently definite runs counter to both common sense and the law. *See Moore v. Beaufort Cty., N.C.*, 936 F.2d 159, 163 (4th Cir. 1991) ("Attorney's fees need not be fixed at the time of settlement.").

Second, Mr. Francis argues that the "American Rule" generally bars recovery of fees based on an opposing party's rejection of a settlement offer, and therefore "Defendants have no claim to recover any sanction merely because Plaintiff rejected their settlement offer." Opp.

(Dkt. No. 83) at 5-6. That, however, fundamentally mischaracterizes the events that precipitated Defendants' Motion. Plaintiff did not, as Mr. Francis claims, reject Defendants' offer. Rather, Mr. Francis rejected the offer himself and deprived Plaintiff of any role in that decision. The "American Rule" has nothing to do with an attorney's failure to convey a settlement offer to his or her client.

Third, Mr. Francis asserts that even if his failure to convey Defendants' settlement offer violated his ethical obligations under the Virginia Rules of Professional Conduct, Virginia law holds that "only a client may seek relief for an attorney's dereliction of duty to the client." Opp. (Dkt. No. 83) at 6. Mr. Francis' conduct, however, implicates his professional obligations "to his adversaries and the court as well as his client[ ]." *Deadwyler*, 134 F.R.D. at 140. These obligations are interrelated but ultimately independent, and Mr. Francis can be liable both to his client and to the Court for the same misconduct. It would be a strange result indeed if this Court were powerless, as Mr. Francis claims, to redress abuse of process under § 1927 where an attorney's misconduct simultaneously violates rules of professional conduct.

Fourth, Mr. Francis argues that Defendants have failed to demonstrate any lapse in his professional obligations to Plaintiff under the Virginia Rules of Professional Conduct because hypothetically "Plaintiff could have provided authorization for a range of settlement amounts without knowledge of a specific demand within that range," thus excusing Mr. Francis from his ethical obligation to convey any demand falling outside those parameters. Opp. (Dkt. No. 83) at 6-7. In light of Mr. Francis' Declaration, the undersigned will address this argument more fully below in Section II(B). The record before the Court, however, reflects no evidence that *Plaintiff*, as opposed to Mr. Francis, imposed any such condition on settlement.

Fifth, Mr. Francis claims "Defendants' argument that rejection of a settlement offer . . .

increased the costs of litigation improperly assumes that Plaintiff would have accepted the offer." Opp. (Dkt. No. 83) at 7. As an initial matter, courts have not required such a showing to impose § 1927 sanctions under similar circumstances. *See, e.g.*, *Deadwyler*, 134 F.R.D. at 140; *Abraham*, 1991 WL 89917, at *6. Regardless, the Court has before it Plaintiff's sworn testimony that the offer exceeded the terms on which he would have accepted settlement. *See* Depo. Tr. 105-08. This evidence is more than sufficient.

Sixth, Mr. Francis argues that "while Defendants assign blame entirely to Plaintiffs' counsel for terminating settlement discussions, [Defendants' counsel] Mr. Newburger shares equal responsibility for the termination of those discussions." Opp. (Dkt. No. 83) at 7-8. This is a non sequitur. Regardless of what role Defendants' counsel played in terminating settlement discussions, the undisputed facts establish that Mr. Francis deprived Plaintiff of any role in the discussions that took place. Only the latter conduct is material to the Motions now before the Court.

Seventh and finally, Mr. Francis argues that the only way he can "fully defend" Defendants' Motion is to provide details of privileged communications with his client regarding settlement, and "Defendants must not be allowed to obtain communications between Plaintiff and his counsel simply by filing a motion for sanctions." Opp. (Dkt. No. 83) at 8. Defendants, however, do not seek such communications in their Motion. Moreover, Mr. Francis finds himself in this predicament precisely because he acknowledges that, by and large, no such communications exist. Regardless, the undersigned invited Mr. Francis to seek from his former client a waiver of attorney/client privilege as to pertinent communications and offered to provide Mr. Francis an opportunity to cross examine his client. *See* Hrg. Audio 11:47:56. Mr. Francis pursued neither of these options. Given the ample opportunities afforded Mr. Francis to bring

additional evidence to the Court's attention, the undersigned is unwilling to presume its existence in the absence of any discernable reason to do so.

In light of the above, Mr. Francis has failed to put forth any argument that would permit the Court to ignore the evidence showing that Mr. Francis' conduct multiplied these proceedings and clearly demonstrated "reckless indifference to the law." *Stradtman*, 2015 WL 4668402, at *3. The undersigned reiterates, however, that this conduct was not limited to Mr. Francis' failure to convey Defendants' settlement demand. While such conduct is independently sanctionable, *see Deadwyler*, 134 F.R.D. at 139-40, Mr. Francis went much further. Mr. Francis aggressively pursued this case when his client in fact suffered no damages and desired no relief, thus wasting both Defendants' resources and the Court's time. This was caused by Mr. Francis' broader failure to honor his professional obligation to consult with his client for instruction and information. It is not clear when this greater, sustained failure began. It is clear, however, that at least as of September 30, 2015, it became sanctionable under § 1927.[12]

---

[12]   It is worth noting Mr. Francis was on notice that such behavior would put him at risk for sanctions under § 1927. Four years ago, Mr. Francis was accused of similar conduct in this Court. In that case, Mr. Francis' former client moved to dismiss the action claiming that Mr. Francis had litigated the case without her knowledge or consent. *See* Motion to Voluntarily Dismiss (Dkt. No. 46), *Penn v. Daniel T. Bengston, Esq.*, No. 11-cv-01001 (E.D. Va. Oct. 31, 2012). Mr. Francis narrowly avoided sanctions under § 1927 because "the record before the court . . . [was] not sufficient to make a determination of whether [the client] did or did not authorize the filing of these actions and whether her counsel kept her apprised of the status of the litigation filed in her name." Order (Dkt. No. 70), *Penn v. Daniel T. Bengston, Esq.*, No. 11-cv-01001 (E.D. Va. Apr. 5, 2013). The Court's decision was based primarily on the absence of sworn testimony on the part of Mr. Francis' former client, *see id.*—a deficiency not shared by the record in the present case. The undersigned makes no judgment as to the veracity of these earlier claims, and does not rely on Defendants' conduct in any previous case to impose sanctions in this one. It is clear, however, that a reasonably prudent attorney who had previously been accused of such conduct would carefully avoid engaging in it in the future. Mr. Francis' actions in this case standing alone evince "reckless indifference to the law" sufficient for purposes of § 1927. *Stradtman*, 2015 WL 4668402, at *3. Viewed in context, that recklessness is magnified significantly.

###### B.   Mr. Francis' Declaration

In order to ensure that Mr. Francis was afforded every opportunity to mount his defense, the undersigned permitted Mr. Francis to submit evidence that would clarify or rebut Plaintiff's deposition testimony. Among other things, the Court offered to conduct an evidentiary hearing at which Mr. Francis might have cross examined Plaintiff. *See* Hrg. Audio 11:47:56. Mr. Francis declined that invitation and chose instead to submit a Supplemental Declaration (Dkt. No. 94).

The only substantial defense Mr. Francis offers in his Supplemental Declaration is that he had "an understanding" with Plaintiff that only a settlement offer including payment of his fees from the Fairfax County matter would be acceptable. Francis Decl. (Dkt. No. 94) ¶¶ 1-12. Thus, because the settlement offer propounded by Defendants on September 30, 2015 expressly omitted payment of fees resulting from the Fairfax County case, it was *per se* unacceptable and was not required to be conveyed. *See id.* ¶ 12.[13]

No such arrangement is contemplated in Mr. Francis' representation agreement with Plaintiff, attached as Exhibit A to Mr. Francis' declaration. *See* Francis Decl. Exh. A (Dkt. No. 94-1). The undersigned notes further that this explanation is inconsistent with other representations Mr. Francis has made to the Court. In opposing Defendants' counsel's pro hac vice application, Mr. Francis claimed that had Defendants' settlement offer assumed the form of an offer of judgment, "it might have been accepted by Plaintiff." Opp. to Pro Hac Vice (Dkt. No.

---

[13]   Mr. Francis also states that he only "present[s] settlement offers to clients when the offer is in the form of an agreement that my client can sign in order to create contractual liability for the other party." Francis Decl. (Dkt. No. 94) ¶ 19. No such document, however, is required for an offer to constitute a *bona fide* offer of settlement; the form of an offer is secondary to the "objectively manifested intentions of the parties." *Moore v. Beaufort Cty., N.C.*, 936 F.2d at 162. Accordingly, a settlement offer lacking the particular form of a contractual agreement is still a validly constituted offer, and as such triggers an attorney's duty to convey that offer to their client. *Cf. Norris v. Brown*, 7 Va. Cir. 116, 1982 WL 215187, *1 (1982) ("[A] settlement offer that is ambiguous on its face is still a settlement offer.")

46) at 3 n.1. If the offer in fact lacked a material term, as Mr. Francis now claims, it is difficult to see why its form would have mattered.

Moreover, the record does not disclose any reason Plaintiff would have had an interest in recovering attorney's fees; indeed, Plaintiff testified at his deposition that he believed he had incurred no legal fees beyond his initial $3,000 payment to Mr. Francis. Depo. Tr. 69. The undersigned notes as well that Plaintiff has declared bankruptcy and Mr. Francis is not among his creditors. *See* Depo. Tr. 71. This further supports Plaintiff's understanding that he does not owe Mr. Francis any additional fees or costs for his services. This understanding was apparently fostered by Mr. Francis himself, who at the outset of this litigation "explained to Mr. Blowers that any fees in excess of the $3,000 he had paid me would be recovered from either the plaintiff [in the Fairfax County case] . . . or the counsel for the plaintiff in that action through a subsequent action." Francis Decl. (Dkt. No. 94) ¶ 5. Such an arrangement would certainly provide Mr. Francis with an incentive not to settle this case absent payment of his fees, but it would not provide a similar incentive for Plaintiff.

The only reason Mr. Francis gives for Plaintiff's purported interest in recovering fees is that it was important to Plaintiff to repay the $3,000 loan that financed Mr. Francis' retainer. *See id.* ¶ 8. Plaintiff, however, had already repaid that loan before this litigation began in earnest— and before Defendants' September 30, 2015 settlement offer. Depo. Tr. 70-71. Moreover, Plaintiff testified at his deposition that he did not expect to recover *any* money, either in the Fairfax County case or in this one. *See* Depo. Tr. 48, 104-05. Certainly Mr. Francis' representation agreement with Plaintiff does not contemplate repayment of Mr. Francis' retainer upon recovery of attorney's fees. *See* Francis Decl. Exh. A (Dkt. No. 94-1). The record belies any claim that recovery of attorney's fees was a material settlement term for Plaintiff.

In fact, a careful reading of Mr. Francis' Declaration confirms that recovery of attorney's fees was not a settlement term dictated by Plaintiff. Rather, it was, according to Mr. Francis, an "understanding" or "agreement between [Mr. Francis] and Mr. Blowers" regarding the terms of Mr. Francis' representation—the benefit of which would inure solely to Mr. Francis. *See* Francis Decl. (Dkt. No. 94) ¶¶ 1-12. The problem with such an arrangement is that the "decision to settle a claim *is the client's alone*." *Andrews v. Andrews*, 80 Va. Cir. 279, 2010 WL 7373716, *3 (2010) (emphasis added). Accordingly, agreements which limit a client's ability to settle a case except on terms acceptable to his or her attorney are void as unethical and contrary to public policy. *See* Virginia Rule of Prof'l Conduct 1.2 Comment 5 ("An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and other law. Thus, the client may not be asked to agree . . . to surrender . . . the right to settle litigation that the lawyer might wish to continue."); *see also In re Circle T Pipeline, Inc.*, No. 11-70556, 2011 WL 9688240, at *13 (W.D. Va. Apr. 27, 2011) (provision in retainer agreement giving attorney settlement authority improperly "put the [attorney], rather than the [client], in control of the case" and raised ethical issue "of such seriousness as to justify some sanction designed to dissuade counsel from utilizing such provisions in the future"); *Dorsey v. Home Depot U.S.A., Inc.*, 271 F. Supp. 2d 726, 730 (D. Md. 2003) (quoting *Dombey, Tyler, Richards & Grieser v. Detroit, T. & I. R. Co.*, 351 F.2d 121, 125 (6th Cir. 1965)) (noting the "fundamental principle . . . that a representation contract which restricts a tort claimant's right to settle his claim without his attorney's consent is completely void and unenforceable"); *Gray v. Dummitt*, No. 06-cv-0322, 2007 WL 6925690, at *6 (E.D.N.Y. Dec. 21, 2007), *overruled in later appeal*, No. 06-cv-0322, 2009 WL 210865 (E.D.N.Y. Jan. 9, 2009) ("Regardless of informed consent, an attorney may not oblige her client to get the attorney's consent before accepting a settlement agreement.

Similarly, a lawyer is duty-bound to communicate all settlement offers to the client; withholding information 'effectively arrogate[s] to the attorney' the client's exclusive right to decide whether to accept or reject an offer to settle her claims."); *Lemmer v. Charney*, 195 Cal. App. 4th 99, 103-04 (2011); *Rancman v. Interim Settlement Funding Corp.*, 789 N.E.2d 217, 220 (Ohio 2013); *Andrewes v. Haas*, 214 N.Y. 255, 258 (1915); *cf. XL Ins. Am., Inc. v. BJ's Wholesale Club, Inc.*, 86 Va. Cir. 476, 2013 WL 8035743, at *4 (2013) ("an attorney may not define his authority independent of his client's wishes . . . especially . . . in the context of settlement agreements, where the decision to settle unquestionably belongs to the client"). Indeed, Mr. Francis' aggressive pursuit of a claim in which his client had no interest demonstrates the wisdom of this tradition. Assuming such an understanding existed, it would neither excuse Mr. Francis' failure to convey Defendants' offer, nor would it vitiate a showing of bad faith on Mr. Francis' part.[14]

Regardless, and more importantly, the record clearly demonstrates that Plaintiff did not share Mr. Francis' understanding. Plaintiff testified under oath that he would not have accepted *any* money from Defendants—whether in damages or attorney's fees. *See* Depo. Tr. 103-04. Indeed, Plaintiff conclusively demonstrated that he did not view attorney's fees as a necessary component of any settlement when he accepted an offer that omitted attorney's fees at his deposition. *See* Depo. Tr. 105-08. Plaintiff's desire to settle this case—and to do so without accepting any remuneration from Defendants—was in fact so vehement that he discharged

---

[14]      Even if Mr. Francis truly believed that his client desired to recover attorney's fees in this action, when Mr. Francis rejected Defendants' offer of settlement he had not spoken with his client in months. Given that passage of time and the apparent informality of Mr. Francis' agreement with Plaintiff, it was unreasonable for Mr. Francis to act without first conferring with his client to ensure that their alleged mutual understanding remained in force. The presumption in the law that attorneys must convey settlement offers to their clients is near-absolute, and brooks only the narrowest of exceptions. Even if Mr. Francis believed that he was acting consistently with his client's wishes—and the undersigned is far from convinced he labored under any such belief—Mr. Francis owed far greater caution both to the Court and to opposing counsel. *See Deadwyler*, 134 F.R.D. at 140.

Mr. Francis when Mr. Francis attempted to impede the settlement. *See* Depo. Tr. 107-08. It is hard to imagine Plaintiff making his priorities any clearer.

Mr. Francis' Declaration therefore establishes at best that a self-interested, one-sided, and clearly unethical "understanding" led Mr. Francis to gravely misapprehend his client's goals and desires with respect to this litigation. At worst, Mr. Francis' Declaration establishes that he willfully ignored his client's wishes with respect to this litigation and instead pursued his own financial interests, engaging in what might arguably be termed barratry. *See Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 299 (4th Cir. 2002) (traditional prohibition on barratry proscribes "schemes to stir up and promote litigation for the benefit of the promoter rather than for the benefit of the real party in interest"); *see also Nat'l Ass'n for the Advancement of Colored People v. Comm. on Offenses Against the Admin. of Justice*, 199 Va. 665, 678 (1958), *vacated sub nom. Nat'l Ass'n for the Advancement of Colored People, Inc. v. Comm. on Offenses Against the Admin. of Justice*, 358 U.S. 40 (1958) (discussing the prohibition on barratry in Virginia). While the undersigned has applied the "objective" standard of "bad faith" employed by this Court in assessing sanctions under § 1927, *see Stradtman*, 2015 WL 4668402, at *3, Mr. Francis' Declaration establishes that his conduct here would easily meet even a "subjective" standard of "bad faith" under § 1927.

The undersigned notes that one exhibit to Mr. Francis' Declaration may help to explain Plaintiff's lack of interest and involvement in these proceedings: the representation agreement between Mr. Francis and Plaintiff reserves to Mr. Francis the discretion to unilaterally pursue additional litigation related to the Fairfax County case. *See* Francis Decl. Exh. A (Dkt. No. 94-1). There is much in the record to indicate that Mr. Francis exercised that option in filing the present action. Regardless of whether Mr. Francis consulted with Plaintiff before filing this case,

however, it is undisputed that he did not do so during its pendency. Mr. Francis offers no explanation for this broader failure, which undoubtedly led to any misunderstanding he may have had regarding his client's wishes. His Declaration does not set forth facts that make his actions less "reckless," *Stradtman*, 2015 WL 4668402, at *3, but rather establishes that he acted with subjective "bad faith." Accordingly, Mr. Francis' Declaration does not warrant any modification to the undersigned's conclusion that Mr. Francis violated § 1927.

### C.      Mr. Francis' Incivility During This Litigation

The undersigned would be remiss not to note Mr. Francis' incivility toward Defendants and opposing counsel. While a finding of "bad faith" under § 1927 "does not require malice or ill will," *Stradtman*, 2015 WL 4668402, at *3, there is some indication that even that high bar may be met in this instance. Mr. Francis' filings and communications with opposing counsel strike a tone that suggests Mr. Francis was motivated in this litigation—at least in part—by spite or "malice."

The record is replete with instances of such incivility. One need look no further than the first page of the first document filed in this matter, in which Mr. Francis characterizes Defendants as "attorneys who are employees of Zwicker & Associates, P.C. ('Zwicker'), which purports to be a law firm but is in reality a collection mill masquerading as a law firm." Compl. (Dkt. No. 1) ¶ 3. In communications with Defendants, Mr. Francis indicated that he pursued this matter in part to teach Defendants to "follow the example of those collection mills who simply discontinue the underlying action after I enter my appearance," because Defendant Lerner "apparently thinks he is superior to other Virginia collection attorneys so that he does not need to do a walk away." Df. Mot. for Sanctions Exh. B (Dkt. No. 71-1).

Even before a single motion had been filed or discovery request propounded, Mr. Francis

had already suggested that Defendants' employer fire Mr. Lerner and insinuated that he was contemplating a bar complaint against Mr. Lerner based on Mr. Lerner's alleged failure to serve Plaintiff with a summons in the Fairfax County matter. *See id*. Mr. Francis has maintained his intention to file such a complaint, *see* Hrg. Audio 11:33:25, notwithstanding the sworn testimony of his own client undermining Mr. Francis' accusation. Depo. Tr. 50-51.

Mr. Francis' threats of bar complaints have since multiplied, and his targets now include Defendants' counsel. *See* Df. Mot. for Sanctions Exh. G (Dkt. No. 71-1). This threat follows on the heels of Mr. Francis' vociferous and baseless opposition to the application for admission pro hac vice filed by Defendants' counsel. The Court has already found that Mr. Francis' filings with respect to this matter lacked both legal support and "the civility and professional courtesy expected of attorneys practicing in this Court." Order (Dkt. No. 60). Notwithstanding this finding—or, for that matter, his withdrawal from the case—Mr. Francis persists in his opposition. At the hearing on this matter, Mr. Francis again attempted to justify his position based on Defendants' counsel's use of a single curse word to describe a third party. Hrg. Audio 11:34:25 ("I'm going to oppose the application, bar application of somebody who uses profanity in a conversation with me. Yes, I'm going to do that."). Asked if he was aware of any legal basis for his position, Mr. Francis was forced to admit he was not. Hrg. Audio 11:34:40. Yet even after the hearing, Mr. Francis has persisted. *See* Mem. in Opp. to Mot. to Supplement the Record (Dkt. No. 95) at 1-2 ("Unless Mr. Newburger's filthy mouth is consistent with [the Court's] 'high standards of professionalism[,]' then his pro hac vice admission must be revoked and should never have been granted.").

In short, Mr. Francis' conduct toward Defendants and opposing counsel has been unreasonable, bordering on the malicious. Mr. Francis' apparent distaste for his opponents

spawned a host of unnecessary motions, needlessly increasing Defendants' costs and wasting the Court's time. In light of the findings and conclusions above, however, the undersigned need not determine whether Mr. Francis' actions in this regard independently demonstrate "bad faith" for purposes of § 1927.[15] It is enough to note that, if nothing else, such actions add to the weight of evidence favoring that conclusion.

###     D.     Conclusion

For the reasons set forth above, the undersigned finds that as a result of Mr. Francis' "unreasonabl[e] and vexatious[ ]" conduct, these proceedings were "multiplie[d]" within the meaning of 28 U.S.C. § 1927. The undersigned finds that Plaintiff's sworn testimony establishes that beginning September 30, 2015, continued litigation in this matter was directly attributable to Mr. Francis' egregious and sanctionable conduct. The undersigned finds further that Defendants incurred expenses associated with that unnecessary litigation. *See* Hrg. Audio 10:49:50. Finally, the undersigned finds that as those expenses were "incurred because of [Mr. Francis'] conduct," Mr. Francis should bear Defendants' reasonable costs and fees incurred after September 30, 2015, pursuant to 28 U.S.C. § 1927.

As to Mr. Francis' Motion for Sanctions under Rule 11, the undersigned finds that it should be denied. Mr. Francis' Motion rests upon the contention that Defendants' Motion is frivolous. Because the undersigned finds Defendants' Motion meritorious, there can be no basis for granting Mr. Francis the relief he seeks.

---

[15]     While Mr. Francis appears to maintain that his incivility cannot serve as the basis for a finding of "bad faith" under § 1927, *see* Opp. (Dkt. No. 83) at 14-15; Hrg. Audio 10:53:11, Mr. Francis has himself in fact been threatened with § 1927 sanctions by another court with respect to such conduct. *See In re Johnson*, 236 B.R. 510, 523-24 (D.D.C. 1999) (inviting a motion for § 1927 sanctions against Mr. Francis for filings that served solely as a vehicle for an "unprofessional diatribe" against opposing counsel).

### III.    Recommendation

In sum, the undersigned recommends:

1. GRANTING Defendants' Motion for Sanctions Pursuant to § 1927 and awarding Defendants reasonable attorney's fees and costs incurred after September 30, 2015; and

2. DENYING Mr. Francis' Motion for Sanctions Under Rule 11.

### IV.    Notice

The parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

      /s/
_____
Michael S. Nachmanoff
United States Magistrate Judge

March 14, 2016
Alexandria, Virginia