IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

ANDREW BLOWERS,                    )
                                   )
    Plaintiff,                     )
                                   )
                                   )     Case No.  1:15-cv-889-GBL-MSN
    v.                             )
                                   )
ANDREW S. LERNER, ESQ., et al.,    )
                                   )
    Defendants.                    )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Magistrate Judge Michael S. Nachmanoff's

Report and Recommendation (Doc. 97) in which the Judge Nachmanoff recommends this Court

(1) grant Defendants' Motion for Sanctions Pursuant to 28 U.S.C. § 1927 (Doc. 69) and award

Defendants reasonable attorney's fees and costs incurred after September 30, 2015, and (2) deny

Respondent Ernest P. Francis' Motion for Sanctions Under Rule 11 (Doc. 74). Also before the

Court is Mr. Francis' Objection (Doc. 104) to Judge Nachmanoff's Report and

Recommendation. The present motions for sanctions arise principally as a result of Mr. Francis'

failure communicate with his client Andrew Blowers ("Plaintiff") during the pendency of this

litigation, and in particular, Mr. Francis' failure to communicate a settlement offer on September

30, 2015 which would have ended the case. There are two issues before the Court. The first

issue is whether the Court should adopt the Judge Nachmanoff's Report and Recommendation,

under circumstances where Plaintiff's counsel, Mr. Francis, did not communicate with his client

for six months, during which time he litigated unilaterally without his client's knowledge or

consent, and withheld a settlement offer from his client that would have brought the litigation to

an early conclusion because Mr. Francis felt the offer did not include adequate attorney's fees.

The second issue is whether Defendants' requested attorney's fees and costs pursuant to the motion for sanctions, as set forth in Defendants' Statement of Fees and Costs (Doc. 99), are reasonable.

The Court ADOPTS the recommendations contained in Judge Nachmanoff's Report and Recommendation in its entirety because the Court finds that Mr. Francis, in pursuing this litigation unilaterally and failing to convey the terms of the September 30, 2015 settlement offer to Plaintiff, "multiplie[d] the[se] proceedings . . . unreasonably and vexatiously" within the meaning of § 1927, and accordingly, Defendants are entitled to recover reasonable attorney's fees and costs from that date. Next, the Court finds that Defendants' requested award of attorney's fees and costs totaling $84,752.00 are reasonable and shall be paid by Mr. Francis. Because the Court finds Defendants' motion for sanctions meritorious, the Court DENIES Respondent's Motion for Sanctions Under Rule 11 in which he claims Defendants' motion is frivolous.

## I. BACKGROUND

Judge Nachmanoff skillfully and comprehensively and set forth the relevant facts in the Report and Recommendation, and the material facts in this case are not in dispute. The following is a summary of the facts underlying the present motions. Defendants Andrew S. Lerner and Gregory B. Walz ("Defendants") are attorneys who represented American Express Centurion Bank in a debt collection action against Plaintiff. On October 9, 2014, Defendants filed suit against Plaintiff in the Fairfax County Circuit Court to recover a debt of approximately $40,000 owed on Plaintiff's credit card. Compl. (Doc. 1) ¶¶ 7, 27-28. When Plaintiff failed to respond, Defendants moved for default judgment. *Id.* at 13. Mr. Francis entered an appearance on Plaintiff's behalf in the Fairfax Circuit Court on December 31, 2014, and opposed

Defendants' Motion for Default Judgment at a hearing held on January 9, 2015. *See* (Doc. 30-1). Based on Plaintiff's testimony that he had not seen a summons attached to the complaint with which he was served, the Circuit Court held that it could not enter default judgment against him. *Id.* at 41.

On July 9, 2015, Mr. Francis filed the instant suit against Defendants, allegedly on Plaintiff's behalf, asserting violations of the Fair Debt Collection Practices Act ("FDCPA"). Compl., 3-7. The claims raised here relate to the proceedings in Fairfax County and are based, in part, on Defendants' purported failure to properly serve Plaintiff with a summons with the Complaint before seeking default judgment against him. The Complaint alleges that as a result of Defendants' conduct in the Fairfax County case, Plaintiff incurred $50,000 in "actual and statutory damages." *Id.* at 8.

On September 29, 2015, Plaintiff declared bankruptcy and the proceedings in Fairfax Circuit Court were stayed. *See* Doc. 89-1; Hrg. Audio 11:28:42. The case in this Court proceeded without interruption, with a settlement demand propounded by Mr. Francis on September 24, 2015, and a counteroffer by Defendants on September 30, 2015 (the "Settlement Offer"). (Doc. 71-1, 8). Mr. Francis rejected the Settlement Offer, admittedly without informing his client of its existence. *Id.* at 9. Mr. Francis maintains that he was acting under the authority of a "prior understanding" with Plaintiff that had established certain parameters for an appropriate settlement offer. (Doc. 94, ¶ 7). Under these parameters, Mr. Francis maintains that any offer that did not include attorney's fees for the Fairfax County litigation was per se unreasonable, thus affording Mr. Francis the authority to reject the offer without first needing to refer to Plaintiff. *See id.* ¶¶ 7, 12. This litigation also contained briefing on a motion for partial summary judgment, and numerous collateral disputes, among which was Mr. Francis' consistent

and aggressive opposition to the admission pro hac vice of Defendants' counsel based in part on his use of a single curse word during a telephone call directed at a third party. (Docs. 46, 49, 56; Hrg. Audio 11:34:25 ("I'm going to oppose the application, bar application of somebody who uses profanity in a conversation with me. Yes, I'm going to do that.")).

On January 12, 2016, this case came to an abrupt halt as a result of Plaintiff's deposition. Plaintiff testified that he had no contact with Mr. Francis throughout the instant litigation, had suffered no harm that would justify this litigation, did not want the relief sought in this litigation, and had no interest in pursuing this litigation. *See generally* Doc. 71-1. The deposition ended with Plaintiff discharging Mr. Francis and agreeing to settle the case in exchange for Defendants' promise that they would not seek fees or costs from him. *Id.* at 106:01-108:03. Defendants' Motion for Sanctions rests primarily upon the testimony that Mr. Francis failed to consult with Plaintiff during the pendency of this case, which Defendants allege led to unnecessary and vexatious multiplication of these proceedings. (Doc. 69, at 1). Plaintiff testified at his deposition that he did not speak with Mr. Francis at all from the filing of the Complaint in this matter until the week before Plaintiff's deposition on January 12, 2016. (Doc. 71-1, 50:00-51:17).

For purposes of Defendants' Motion for Sanctions, Plaintiff's most important testimony concerned Mr. Francis' failure to convey the Settlement Offer propounded by Defendants on September 30, 2015. (Doc. 71-1, 101:21-102:24). The Settlement Offer stated that Defendants were "willing to pay the total sum of $1,100.00 plus reasonable fees and costs incurred in this action, in full settlement of this matter. *Id.* When asked whether he would have accepted this offer had it been conveyed to him, Plaintiff responded that he would not have, but only because the offer was too generous. (Doc. 71-1, 102:00-105:10). Shortly after this testimony at the

deposition, Defendants' counsel made another settlement offer addressed to Mr. Francis in Plaintiff's presence: if Plaintiff would agree to dismiss the case with prejudice before the end of the deposition, Defendants would "not seek fees against [Plaintiff] for this litigation." *Id.* at 106:00-107:00. Plaintiff responded by discharging Mr. Francis and immediately accepted the offer. *Id.*

Mr. Francis moved to withdraw from his representation of Plaintiff the day after the deposition, while seeking to remain in the case solely for purposes of further contesting Defendants' counsel's application for admission pro hac vice. *See* Doc. 56. Defendants consented to Mr. Francis' withdrawal on the condition that the Court retain jurisdiction over Mr. Francis in order to permit Defendants to pursue sanctions under § 1927 against him. *See* Doc. 61. The Court granted Mr. Francis' Motion to Withdraw and retained jurisdiction over him for 180 days. *See* Doc. 65.

On February 5, 2016, Defendants filed the present Motion for Sanctions pursuant to 28 U.S.C. § 1927. Defendants argue that Mr. Francis' conduct in this litigation, as evidenced by the sworn testimony of his own client, unreasonably and vexatiously multiplied the proceedings before this Court. Defendants also assert that this has caused them excessive costs and fees, and also cite Mr. Francis' numerous threats of bar complaints as further grounds for their Motion.

In response, Mr. Francis not only opposed Defendants' Motion, but filed his own Motion for Sanctions under Rule 11, claiming that Defendants' Motion is frivolous. *See* Doc. 74. Mr. Francis also moved to suppress Plaintiff's deposition. *See* Doc. 78. Magistrate Judge Nachmanoff readily denied the latter motion as legally unsupported. Hrg. Audio 10:24:00.

On February 19, 2016, Judge Nachmanoff held a two-hour oral argument, at which the parties were permitted to argue their motions at length. At the conclusion of that hearing, Judge

Nachmanoff granted both parties leave to supplement the record in light of the gravity of this matter. *See* Doc. 88. Judge Nachmanoff also raised the possibility that Mr. Francis could either obtain from Plaintiff a waiver of attorney-client privilege as to pertinent client communications, or alternatively could conduct an evidentiary hearing at which Mr. Francis would have an opportunity to cross-examine Plaintiff if he believed the record was incomplete. Hrg. Audio 11:47:56. Mr. Francis declined to exercise both options, instead submitting a Supplemental Declaration (Doc. 94).

Mr. Francis' Declaration is largely dedicated to explaining his failure to convey Defendants' settlement offer to Plaintiff. First, Mr. Francis argues that there was an existing understanding between him and Plaintiff as to settlement discussions, specifically that "no settlement offer from an opposing party would be accepted unless it provided for payment in full of attorney's fees incurred in the defense of the Fairfax County Action." (Doc. 94, ¶ 7). Because the Settlement Offer at issue here did not include fees related to the Fairfax County matter, Mr. Francis claims that he was not required to convey it to Plaintiff because it was outside the parameters of Mr. Francis and Plaintiff's prior "understanding." *See id.* ¶¶ 7, 12. Mr. Francis further iterates that his "practice is to present settlement offers to clients when the offer is in the form of an agreement that [his] client can sign in order to create contractual liability for the other party." (Doc. 94, ¶ 19). Because the Settlement Offer here came in the form of an email rather than a contract, Mr. Francis argues he interpreted it as "simply a preliminary negotiation." *Id.* Notably, Mr. Francis concedes that he did not speak to Plaintiff during the pendency of this litigation until a week before Plaintiff's deposition. *Id.* at ¶¶ 10, 20-22.

**The Present Proceedings**

6

On March 14, 2016, Judge Nachmanoff issued a Report and Recommendation recommending that this Court grant Defendant's Motion for Sanctions pursuant to 28 U.S.C. § 1927, and award Defendants reasonable attorney's fees and costs incurred after September 30, 2015, the date Mr. Francis neglected to convey the Settlement Offer to Plaintiff. (Doc. 97, at 1). Judge Nachmanoff reasoned that failure to convey the Settlement Offer "mark[ed] the point at which any responsible attorney would have discovered that this litigation should have ended," and thus all Defendants' reasonable attorney's fees beyond that date were incurred solely because of Mr. Francis' sanctionable conduct under § 1927. (Doc. 97, at 16). Judge Nachmanoff further denied Mr. Francis' Motion for Rule 11 Sanctions. *Id.* at 30. On March 28, 2016, Mr. Francis timely filed an Objection (Doc. 104) to Judge Nachmanoff's Report and Recommendation.

In his Objection, Mr. Francis advances six arguments. First, Mr. Francis argues that Judge Nachmanoff impermissibly imposed liability for attorney's fees without a determination as to what fees are reasonable, and without giving Mr. Francis an opportunity to object. (Doc. 104, at 3). Second, Mr. Francis asserts that settlement discussion cannot be a ground for sanctions because it implicates privileged attorney-client information. *Id.* at 4. Third, Mr. Francis asserts he did satisfy whatever duty he had to his client, and that he has no such duty to Defendants or the Court as Judge Nachmanoff stated. *Id.* at 7. Fourth, Mr. Francis alleges that Defendants have failed to show a causation of excess attorney's fees resulting from Mr. Francis' conduct. *Id.* at 10. Fifth, Mr. Francis argues that Judge Nachmanoff acted improperly in considering Mr. Francis' opposition to Defendants' Motion for Summary Judgment for the purposes of sanctions under § 1927. *Id.* at 12. Sixth, and finally, Mr. Francis argues that his alleged incivility is not a basis for sanctions under § 1927. *Id.* at 13.

7

On April 8, 2016, Defendants filed a Response (Doc. 101) to Mr. Francis' objections, rebutting each of Mr. Francis' arguments in turn. Defendants' maintain that the Court was proper in (1) setting the date by which of fees and costs would be calculated, (2) considering Mr. Francis' failure to communicate settlement offers to Plaintiff, (3) concluding that Mr. Francis did fail to satisfy his obligations to Plaintiff, Defendants, and the Court, (4) finding that Mr. Francis' conduct did cause Defendants excess fees and costs, (5) considering the failure to communicate with Plaintiff regarding opposition to Defendants' Summary Judgment Motion, and (6) considering Mr. Francis' incivility as evidence of bad faith for purposes of § 1927.

On April 14, Mr. Francis filed a Motion for Extension of Time (Doc. 102), and on April 16, he filed a Reply (Doc. 103) to Defendants' Response. In addition to reiterating his primary arguments in the Objection, Mr. Francis further suggests Judge Nachmanoff improperly issued a Report and Recommendation, rather than an order. (Doc. 103, at 2-3). Mr. Francis argues that Judge Nachmanoff was therefore required to discern what dollar amount constitutes Defendants' reasonable attorney's fees and costs in this case, rather than this Court. *Id.* Mr. Francis maintains Judge Nachmanoff's method of setting attorney's fees deprived him of the opportunity to object to the award of Defendants' requested fees. *Id.* at 3-4.

Judge Nachmanoff's Report and Recommendation on Defendants' and Mr. Francis' motions for sanctions, as well as consideration of an award of reasonable attorney's fees and costs, are now properly before this Court.

## II. DISCUSSION

### 1. Standard of Review

Federal Rule of Civil Procedure 72 allows a party to object to the ruling of a magistrate judge. Courts in this district customarily treat motions for sanctions as non-dispositive and

appropriately decided by magistrate judges. *See Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 304-05 (E.D. Va. 2004) (Ellis) (reviewing a motion for sanctions under Rule 72(a) after finding the motion non-dispositive under 28 U.S.C. § 636(b)); *see also Manship v. Bros.*, No. 1:11-CV-1003, 2012 WL 527349, at *2 (E.D. Va. Feb. 16, 2012) ("Although the Fourth Circuit has not spoken definitively on whether . . . sanctions matters are dispositive or non-dispositive, the Court finds that the issue of Rule 11 sanctions in this case is non-dispositive, as the nature of the sanction imposed is not dispositive of any claim or defense."); *Guarantee Co. of North America U.S.A. v. Metro Contracting, Inc.*, No. 2:13-cv-02266, 2015 WL 402909, at *6 (D.S.C. Jan. 28, 2015) (finding the discovery sanction at issue non-dispositive and reviewed under Rule 72(a) because applying the sanction could not dispose of the case).

Pursuant to Rule 72(a) a "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law" on non-dispositive matters. Fed. R. Civ. P. 72(a). The Fourth Circuit has held that the "clearly erroneous" standard is deferential and that findings of fact should be affirmed unless review of the entire record leaves the reviewing court with "the definite and firm conviction that a mistake has been committed." *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 792 (E.D. Va. 2008). A decision is considered contrary to law "when it fails to apply or misapplies relevant statues, case law, or rules of procedure." *Attard Industries, Inc. v. U.S. Fire Ins. Co.*, No. 1:10-cv-121, 2010 WL 3069799 at *1 (E.D. Va. Aug. 5, 2010) (citing *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006)). The Eastern District of Virginia has noted that for questions of law, "there is no practical difference between review under Rule 72(a)'s contrary to law standard and [a] *de novo* standard." *Bruce v. Hartford*, 21 F. Supp.3d 590, 594 (E.D. Va.

2014) (quoting *Robinson v. Quicken Loans Inc.*, No. 3:12-cv-0981, 2013 WL 1704839, at *3 (S.D.W. Va. Apr. 19, 2013)). Therefore, the Court reviews the factual findings of the magistrate judge's Report and Recommendation for clear error, and reviews *de novo* legal conclusions. *Id.* at 593-94.

## 2. Analysis

### A. Judge Nachmanoff's Report and Recommendation

Upon independent review of the record, and finding no error in Judge Nachmanoff's factual findings or legal conclusions, the Court adopts the Report and Recommendation of Judge Nachmanoff in its entirety. Judge Nachmanoff correctly applied the standards under 28 U.S.C. § 1927 to conclude that Mr. Francis' unreasonable behavior, in particular his lack of consultation with Plaintiff regarding the terms of the September 30, 2015 Settlement Offer, and the degree of recklessness and bad faith Mr. Francis otherwise exhibited in these proceedings, amounts to conduct that "multiplie[d] the proceedings . . . unreasonably and vexatiously" sufficient to warrant sanctions and an award of attorney's fees and costs to Defendants in this case. For the reasons set forth below, this Court grants Defendants' Motion for Sanctions pursuant to § 1927 and denies Mr. Francis' Motion for Sanctions under Rule 11. The Court finds that Defendant's attorney fee request is reasonable and awards Defendants' attorney's fees in the amount of $84,752.00 pursuant to 28 U.S.C. §1927. Specifically, Mr. Francis is directed to pay $33,495.00 to Mr. Altmiller, $3,097 to Pesner Kawamoto law firm, and $48,160.00 to Mr. Newburger.

28 U.S.C. § 1927 provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

10

The law's primary aim is "remedying abuse of court process." *Stradtman v. Republic Servs. Inc.*, No. 1:14-cv-1289, 2015 WL 4668402, at *2 (E.D. Va. Aug. 5, 2015). The Fourth Circuit has construed § 1927 as requiring a three part showing from a party moving for sanction relief under the provision. First, the attorney against whom sanctions are sought must "multiply" the proceedings. *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999), *cert. denied*, 529 U.S. 1033 (2000). Second, a showing of "[b]ad faith on the part of the attorney is a precondition to imposing fees under § 1927." *Equal Employ. Opportunity Comm'n v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012); *see also Chaudhry v. Gallerizzo*, 174 F.3d 394, 411 n. 14 (4th Cir. 1999), *cert denied*, 528 U.S. 891 (1999). Third, the moving party must show "excess" attorney's fees and costs due to the conduct of the attorney violating § 1927. *Bakker v. Grutman*, 942 F.2d 236, 242 (4th Cir. 1991).

"Section 1927 focuses on the conduct of the litigation and not on its merits." *DeBauche*, 191 F.3d at 511. "Thus, an attorney who files a meritorious claim and wins a substantial verdict may still be assessed sanctions under § 1927 if, during the case, he multiplies the proceedings . . . unreasonably and vexatiously," while "an attorney who files a meritless claim may not be sanctioned under §1927 if he does not engage in such conduct." *Id.* One way in which an attorney may multiply proceedings within the meaning of § 1927 is to maintain an action beyond the point at which it should have been dismissed. *See Salvin v. Am. Nat. Ins. Co.*, 281 F. App'x 222, 225-26 (4th Cir. 2008).

A "finding of counsel's bad faith [i]s a precondition to the imposition of fees." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991). Although the Fourth Circuit has yet to rule definitively on the issue, *see Salvin*, 281 F. App'x at 225 (reserving the question), the Eastern District of Virginia has consistently interpreted "bad faith" to mean objective rather than

11

subjective bad faith, which "does not require malice or ill will; reckless indifference to the law will qualify. If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Stradman*, No. 1:14-cv-1289, 2015 WL 4668402, at *3 (quoting *Collins v. Dollar Tree Stores, Inc.*, No. 2:09-cv-486, 2010 WL 9499078, at *3 (E.D. Va. May 28, 2010)); *see also Braley v. Campbell*, 832 F.2d 1504, 1511-12 (10th Cir. 1987) (adopting an objective "recklessness" standard of bad faith and listing supporting cases). The Fourth Circuit has further suggested that "[b]ad faith" can be inferred from multiple instances of misconduct unbecoming "an officer of the court." *Blair v. Shenandoah Women's Ctr., Inc.*, 757 F.3d 1435, 1438 (4th Cir. 1985).

### *1. Amount of Defendants' Fees and Costs are properly before the Court*

Mr. Francis first objects to the Report and Recommendation on the ground that Judge Nachmanoff imposed liability for sanctions without properly determining the actual amount of attorney's fees owed. Specifically, Mr. Francis argues that Judge Nachmanoff erred in issuing Report and Recommendation, rather than an order, without a dollar figure of attorney's fees, and also without the opportunity for Mr. Francis to object. (Doc. 104, 3-4). This argument lacks merit, as magistrate judges in this district routinely issue reports and recommendations on motions for sanctions.[1] Mr. Francis further notes that Federal Rule of Civil Procedure 54(d)(2)(E)(5), which allows a party to file a motion for attorney's fees within 14 days after the entry of judgment, is inapplicable to sanctions motions under § 1927. *Id.* at 4. However, Mr.

---

[1] The Federal Magistrate Judge Act, 28 U.S.C. § 636(b)(1)(B) authorizes magistrate judges "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by judge of the court" regarding non-dispositive motions such as the ones now before the Court in the instant case. Mr. Francis advances no valid basis to establish that the magistrate judge issued a Report and Recommendation in error or that it is impermissible for this Court to calculate an award of reasonable attorney's fees and costs arising from a motion for sanctions.

Francis misapplies Rule 54(d)(2)(E)(5) when concluding that "Defendants were not allowed to file documentation in support of fees after the order awarding those fees." *Id.* Mr. Francis fails to provide authority for the proposition that the inapplicability of the Rule acts to create an obligation upon Defendants to submit a fee application prior to the hearing for which they seek fees. Mr. Francis also fails to take into account that Rule 54 relates to permissible timing for a motion for attorney's fees, and is silent with regard to creating a deadline for submitting declarations related to the reasonableness of such fees that have already been imposed.

Mr. Francis further objects on the ground that he has been deprived the opportunity of objecting to the Defendants' method of calculation of excess attorney's fees and costs. In fact, he has not. Judge Nachmanoff issued the Report and Recommendation, recommending sanctions and an award of attorney fees and costs incurred after September 30, 2015, against Mr. Francis on March 14, 2016. Shortly thereafter, on March 28, 2016, Defendants filed a Statement of Fees and Costs (Doc. 99) outlining a request of reasonable fees and costs in accord with the prescribed date forth in the Report in Recommendation. Defense counsel could not have submitted such a filing in advance of the Report and Recommendation. Mr. Francis had ample time and ability to supplement the record with information or object to Defendants' Statement of Fees and Costs, but in the months since Defendants' filing he has not, despite filing other briefs in relation to the motion for sanctions. For the reasons stated below, this Court adopts Judge Nachmanoff's view that Mr. Francis' failure to convey the terms of the Settlement Offer on September 30, 2015, marked the day which Mr. Francis began to unreasonably and vexatiously multiply the proceedings before this Court. Therefore, this Court adopts the formula decided by Judge Nachmanoff in his Report and Recommendation. Despite his protests, nothing prevented

13

Mr. Francis from submitting his own declaration refuting Defendants' proposed of attorney's fees.

### 2. *Judge Nachmanoff Properly Considered Mr. Francis' Failure to Communicate Settlement Offers to Plaintiff*

Mr. Francis next contends that Judge Nachmanoff erred in considering Mr. Francis' failure to convey the terms of the Settlement Offer as a ground for sanctions. Specifically, Mr. Francis asserts that "settlement communications between an attorney and a client are an impermissible ground for an award of sanctions under § 1927," and that "the magistrate judge erred in his statement that the duty that a lawyer had to convey settlement offers is one owed to adversaries and the court as well as the client." (Doc. 104, 5). Mr. Francis' argument raises numerous issues, all of which Judge Nachmanoff correctly disposed of in the Report and Recommendation.

The responsibility to convey the existence and terms of settlement offers to clients is one of an attorney's most important duties. *See, e.g.*, *Rizzo v. Haines*, 520 Pa. 484, 500 (1989) ("Consistent with ordinary skill and knowledge, it [is] incumbent upon [an attorney], as a matter of law, to communicate all settlement offers to his [or her] client."). This is not simply a matter of legal ethics, but "a duty which a lawyer owes to his adversaries and the court as well as his clients." *Deadwyler v. Volkswagen of Am., Inc.*, 134 F.R.D. 128, 140 (W.D.N.C. 1991), *aff'd sub nom. Moore v. Volkswagen of Am., Inc.*, 966 F.2d 1443 (4th Cir. 1992).

Given the substantial weight and clarity of this obligation, Mr. Francis' failure to convey Defendants' Settlement Offer demonstrated "reckless indifference to the law," and conduct "that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Stradtman*, 2015 WL 4668402, at *3. The Fourth Circuit has held that failure to convey a settlement offer is a permissible basis for § 1927 sanctions under circumstances far less

14

compelling than those presented here.  In *Deadwyler v. Volkswagen of America, Inc.*, the plaintiffs' attorney likewise failed to convey a settlement offer to his clients.  Even absent an apparent basis to believe that the offer would have led to the resolution of the case, which Plaintiff's testimony here clearly indicates, the court still found §1927 sanctions appropriate.  *See Deadwyler*, 134 F.R.D. at 140 (adopting the view that an attorney failing to communicate substantial offers of settlements acts "unreasonably and vexatiously" under §1927 even under "the strictest requirements."); *see also Abraham v. Volkswagen of Am., Inc.* No. 90-cv-725, 1991 WL 89917, at *6 (W.D.N.Y. Mar. 11, 1991) (concurring with *Deadwyler*'s analysis and imposing § 1927 sanctions on the same attorney for the same conduct).  The *Deadwyler* court went on to clarify that "[n]o type of misbehavior by an attorney is more universally and categorically condemned, and is therefore more inherently in 'bad faith,' than the failure to communicate offers of settlement." 134 F.R.D. at 140.

Mr. Francis' primary legal objection is to Judge Nachmanoff's ruling that the duty a lawyer has to convey settlement offers is one owed to adversaries and the court as well as the client. Mr. Francis notes that the Virginia Supreme Court declared in *Ayyildiz v. Kidd* that only a client may seek relief for an attorney's dereliction of duty to the client.  220 Va. 1080, 1085 (1980).  However, Mr. Francis disregards the duties he simultaneously owes Defendants and this Court under § 1927.  Section 1927 is meant to cover all actions taken by attorneys that "unreasonably and vexatiously" multiply the proceedings. *See DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) (emphasizing that § 1927 unambiguously covers attorneys who multiply the proceedings and is chiefly concerned with limiting abuse of court processes).  Thus, Mr. Francis did have a duty to Defendants and the Court to convey the terms of the Settlement Offer because Plaintiff's uncontradicted testimony makes clear that the present litigation would have ended on

September 30, 2015, had Plaintiff been aware of the Settlement Offer's existence. (Doc. 71-1, 101:21-102:24). Thus, while Mr. Francis' attorney-client relationship is governed by the Federal Rules of Disciplinary Enforcement according to the Court's local rules, Mr. Francis' actions simultaneously unreasonably and vexatiously multiplied the proceedings under § 1927. Judge Nachmanoff effectively characterized Mr. Francis' attempt to prevent § 1927's applicability stating, "[i]t would be a strange result indeed if this Court were powerless, as Mr. Francis claims, to redress abuse of process under § 1927 where an attorney's misconduct simultaneously violates rules of professional conduct." (Doc. 97, 20).

Mr. Francis also attempts to distinguish *Deadwyler* as inapplicable to his conduct here, but fails to do so.   Judge Nachmanoff correctly applied *Deadwyler* in his Report and Recommendation to determine that the duty to convey the terms of settlement offers exists in the Fourth Circuit. *See Deadwyler*, 134 F.R.D. at 140 ("The absolute obligation to communicate, effectively and accurately, the terms of any offer of settlement for the client's decision is a duty which *a lawyer owes to his adversaries and the court as well as his clients* . . . Breach of this obligation should be viewed as 'a blatant disregard of the rules and regulations which permit the judicial machinery to function smoothly.'") (emphasis added).   Mr. Francis wishes to disregard *Deadwyler* as "irrelevant" because the counsel in that case represented a class action suit, and also because the *Deadwyler* court did not apply Virginia law. *See* Doc. 104, 7.   However, nothing in the *Deadwyler* court's reasoning implied a rule peculiar to class action suits. *Deadwyler*, 134 F.R.D. at 140-41 (acknowledging that while communications in class action suits may be more difficult, sanctions under § 1927 should still be imposed in order to "protect the integrity of the judicial process *and* the class action device.") (emphasis added); *see also DeBauche*, 191 F.3d at 511 ("The unambiguous text of § 1927 aims only at attorneys who

*multiply* the proceedings."). Furthermore, *Deadwyler* was affirmed by the Fourth Circuit specifically on the reasoning of the district court, thus suggesting the Fourth Circuit's approval of the notion that an attorney maintains duties to both the opposing party and the court.

Mr. Francis solely cites *Abrams v. CIBA Specialty Chemicals Corp.* in support for his assertion that an attorney owes no such obligation to the court or the other party. 08-0068-WS-B, 2009 U.S. Dist. LEXIS 112471, at *25-29 (S.D. Ala. Dec. 2, 2009) (declining to impose sanctions because plaintiffs' counsel had already conveyed the terms of a materially indistinguishable prior settlement offer and otherwise performed their duties to the plaintiffs). Mr. Francis' reliance on *Abrams* is misplaced for three reasons. First, nothing in *Abrams* repudiates the principle articulated in *Deadwyler* regarding an attorney's duty to his adversaries and to the court. Second, the *Abrams* court applied a materially different and more stringent legal standard for imposing § 1927 sanctions than the Fourth Circuit dictates. *Id.* at *8-9 ("[T]he Eleventh Circuit has 'consistently held that an attorney multiplies proceedings unreasonably and vexatiously within the meaning of [§ 1927] only when the attorney's conduct is so egregious that it is tantamount to bad faith.'") (citing *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007)). The Eleventh Circuit also imposes a subjective rather than objective standard for bad faith, stating that § 1927 "is not properly used to punish counsel for mere negligence or failure to meet the standard of conduct *expected from a reasonable* attorney." *Id.* at *9 (emphasis added) (citing *Hudson v. Int'l Comput. Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007)).

Third, the facts of *Abrams* are readily distinguishable from Mr. Francis' conduct here. In *Abrams*, plaintiffs' counsel had already fully communicated to all of their 250 clients the details of the defendant's settlement offer. *Abrams*, 2009 U.S. Dist. LEXIS 112471 at *25-26. The

claim for sanctions was based upon an allegation of a subsequent offer made shortly thereafter, containing no material change, which was not communicated to all of the plaintiffs. *Id.* In this case the evidence is clear that Mr. Francis never communicated with Plaintiff regarding any settlement offer; indeed, Mr. Francis did not communicate with Plaintiff until one week prior to Plaintiff's deposition on January 11, 2016. (Doc. 71-1, 102:2-16). Thus, *Abrams* is neither contradictory to *Deadwyler* nor applicable to Mr. Francis' conduct here.

Mr. Francis also asserts that "the failure to convey a settlement offer is not motivated by a desire to increase fees and costs," but rather by a "desire to maximize the recovery for the client." (Doc. 104, 6). The Court finds this argument meritless because it is clear from Plaintiff's testimony that Plaintiff did not want this litigation to continue, and welcomed the chance to settle the case at his deposition. (Doc. 71-1, 101:21-102:24). Moreover, the only material term Mr. Francis acknowledges guided him under the "understanding" between Plaintiff and Mr. Francis is the attorney's fees from the Fairfax proceedings. While Mr. Francis claims he declined the Settlement Offer to maximize recovery for Plaintiff, it is clear that in this case Mr. Francis' conduct reflects an intent to maximize his own recovery of fees from Defendants. Mr. Francis also asserts that he need not produce detailed information regarding his hours worked, and that he submitted the $20,000 figure in light of past cases. The Court finds this unpersuasive, and further holds that Mr. Francis has produced no evidence to rebut the assertion that his estimated attorney's fees from the Fairfax proceeding are $3,000. (Doc. 104, 8-9). Therefore, Mr. Francis fails to persuade the Court that Judge Nachmanoff improperly considered settlement negotiations in his ruling on Defendants' Motion for Sanctions.

Finally, Mr. Francis' Declaration does not alter this Court's conclusion. Mr. Francis' Declaration at best establishes that a self-interested, one-sided, and unethical "understanding" led

Mr. Francis to gravely misapprehend his client's goals and desires with respect to this litigation. At worst, Mr. Francis' Declaration establishes that he willfully ignored his client's wishes with respect to this litigation and instead pursued his own financial interests, engaging in what might arguably be termed barratry. *See Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 299 (4th Cir. 2002) (traditional prohibit on barratry proscribes "schemes to stir up and promote litigation for the benefit of the promoter rather than for the benefit of the real party in interest").

### 3. *Mr. Francis Did Not Satisfy His Obligations to Plaintiff, Defendants, or this Court*

Mr. Francis next objects to Judge Nachmanoff's finding regarding his failure to satisfy his obligations to Plaintiff. Mr. Francis contends that whatever duties he did owe to Plaintiff were satisfied. (Doc. 104, 7). A careful review of both Judge Nachmanoff's Report and Recommendation and Mr. Francis' Declaration reveals that Mr. Francis decisively failed to satisfy his obligations to Plaintiff. Mr. Francis advances several arguments to excuse his failure to communicate the Settlement Offer to his client, none of which are persuasive.

Mr. Francis bases this argument on the "understanding" he had with Plaintiff regarding the parameters of an acceptable settlement, therefore excusing him from communicating with his client regarding settlement offers. *Id.* at 7-8. Mr. Francis further maintains that "[n]othing contradicts [Mr. Francis'] sworn statement that the discussion between Mr. Francis' and his client occurred." *Id.* at 8. Mr. Francis contends that this understanding required a recovery of Mr. Francis' attorney's fees for the Fairfax action in order to be acceptable, therefore excusing him for rejection of Defendants' Settlement Offer without communicating with Plaintiff because the offer did not fall within these supposed parameters. *Id.* However, in the present case, Mr. Francis did not communicate with his client whatsoever for a period of six months. Furthermore, despite Mr. Francis' claim that he had an understanding with his client, Plaintiff testified that he

did not authorize Mr. Francis to reject the September 30, 2015 offer. (Doc. 71-1, 102:2-16). Nothing in the record suggests that Judge Nachmanoff's finding Plaintiff's uncontradicted testimony as credible was "clearly erroneous." Plaintiff's testimony also emphasized that Plaintiff found the Settlement Offer to be more than he was seeking or to which he felt he entitled to. (Doc. 71-1, 102:00-105:10). Thus, regardless of Mr. Francis' own interpretation of the "understanding" and its parameters, Plaintiff did not share the same view.

The Court notes that Mr. Francis' explanation of the "understanding" reveals a clear motive for him not to settle the case, whereas no such incentive existed for Plaintiff. Mr. Francis asserts that Judge Nachmanoff was wrong in concluding that Plaintiff did not owe any fees in excess of $3,000, stating that "this simply ignores the written retainer agreement that says the $3,000 that the client paid is not all that the client owes for the representation." (Doc. 104, 8-9). However, Mr. Francis' own declaration reveals that when he initially met with Plaintiff regarding his representation in the pending state court matter, Mr. Francis explained to Plaintiff "that any fees in excess of the $3,000 he had paid me would be recovered either from the plaintiff . . . or the counsel for the plaintiff action." (Doc. 94, ¶ 5). Moreover, Mr. Francis' "understanding" included no specific requirements relating to what would be an acceptable amount of money for Plaintiff to receive. (Doc. 101, 9). Thus, the Court agrees with Judge Nachmanoff's conclusion that it is apparent that Mr. Francis stood to benefit the most from the recovery of attorney's fees, and not Plaintiff.

For these reasons, the Court AFFIRMS Judge Nachmanoff's finding that Mr. Francis failed to satisfy his duty to Plaintiff and rejects Mr. Francis' objections to the Report and Recommendation on these grounds.

### 4. Mr. Francis' Conduct Caused the Defendants Excess Fees and Costs

Mr. Francis presents two objections to Judge Nachmanoff's conclusion that his failure to communicate the September 30, 2015 Settlement Offer resulted in Defendants incurring excess fees and costs. First, Mr. Francis argues that Plaintiff's testimony that he would have rejected the offer if he had known about it is evidence that failure to convey the Settlement Offer was immaterial. This argument is disingenuous at best. As explained in the Report and Recommendation, Plaintiff's deposition disclosed that the only reason Plaintiff would have rejected this offer was because it was too generous. (Doc. 71-1, 102:00-105:10). Taken within the full context of Plaintiff's sworn statement, the reality is that Plaintiff wanted less from the Defendants, not more.

Second, Mr. Francis argues that Judge Nachmanoff erred by assuming that Plaintiff's testimony in January 2016 reflects what he would have done in regards to the Settlement Offer in September of 2015. Mr. Francis essentially argues that because no one, including himself, communicated with Plaintiff between Defendants expounding the Settlement Offer and Plaintiff's deposition in January, the Court cannot assume what Plaintiff would have done. This argument fails for two reasons. First, Mr. Francis presents no evidence that would refute or contradict Plaintiff's sworn statements regarding the Settlement Offer. Second, the fact that no such evidence exists is precisely the cause for Judge Nachmanoff's order for sanctions.

Having found Plaintiff's sworn statement credible, Judge Nachmanoff correctly determined that this litigation would have ended at the time Defendants expounded the Settlement Offer if Plaintiff had been aware of its existence. (Doc. 71-1, 101:21-102:24). Therefore, all of Mr. Francis' conduct beyond the Settlement Offer "unreasonably and vexatiously" prolonged this litigation within the meaning of § 1927, and all fees and costs Defendants incurred following the Settlement Offer are now properly before the Court for

21

consideration. *See Salvin*, 281 F. App'x at 226 (finding the attorney's actions multiplied proceedings under § 1927 when they unnecessarily "protracted the litigation").

> 5. *Judge Nachmanoff Properly Considered Mr. Francis' Failure to Communicate with Plaintiff Regarding Defendants' Summary Judgment Motion*

Mr. Francis also objects to Judge Nachmanoff "h[olding] that Mr. Francis [is] to be sanctioned for opposing the motion for summary judgment in this action." (Doc. 104, 12). This is an inaccurate characterization of Judge Nachmanoff's recommendation. In the Report and Recommendation, Judge Nachmanoff considered Mr. Francis' decision not to contact his client at all with regard to the summary judgment motion only as evidentiary of Mr. Francis "arrogat[ing] to himself decisions reserved to Plaintiff and pursu[ing] this litigation unilaterally beyond the point at which his client had any interest in it." (Doc. 97, 15-16). Judge Nachmanoff's primary focus in ordering sanctions remains Mr. Francis' failure to convey the terms of the Settlement Offer. (Doc. 97, 16) ("There is little doubt that as of that date [of the Settlement Offer], Mr. Francis' conduct also became unreasonable and vexatious."). Therefore, Judge Nachmanoff was proper in considering Mr. Francis' failure to communicate with Plaintiff in relation to Defendants' summary judgment motion.

> 6. *The Recommendation of Sanctions Was Not Based upon Mr. Francis' Incivility*

Mr. Francis objects that Judge Nachmanoff imposed sanctions under § 1927 for "incivility." However, the Report and Recommendation clearly indicates that Mr. Francis' repeated incivility, although unreasonable and "bordering on the malicious," did not constitute the sole basis for a finding of bad faith in this circumstance. (Doc. 97, 29). Rather, Mr. Francis' incivility was included as evidence of Mr. Francis' bad faith, but was not considered as an independently sufficient basis for sanctions. Moreover, Judge Nachmanoff made clear that Mr.

Francis' other conduct, namely failure to communicate with Plaintiff, were alone sufficient to sanction Mr. Francis. *Id.* at 17.

### B. Mr. Francis' Motion for Sanctions under Rule 11

Because the Court adopts Judge Nachmanoff's recommendation that Defendants' Motion for Sanctions under § 1927 is meritorious, it necessarily follows that Mr. Francis' Motion for Sanctions under Rule 11 is DENIED.

### B. Calculation of Attorney's Fees

Having determined that Defendant's Motion for Sanctions under § 1927 is granted, the Court now turns to the award of attorney's fees and costs. The Fourth Circuit has provided that when "calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). Once the court determines the lodestar figure, the court should "subtract[] fees for hours spent on unsuccessful claims," and then "award[] some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* at 244. The Fourth Circuit further instructed that in deciding what constitutes a reasonable number of hours and rate the court should be guided by the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243-44 (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978)).

On March 28, 2016, Defendants filed a Statement of Fees and Costs (Doc. 99), with accompanying Declarations of John C. Altmiller, Manuel H. Newburger, and Mikhael Charnoff, setting forth the fees and costs incurred in defending the case after September 30, 2015. Defendants request an award of in fees and costs of $40,099.34 for Mr. Altmiller and the law firm Pesner Kawamoto (Doc. 99-1, 1) and an award of $49,078.23 in fees and costs for Mr. Newburger (Doc. 99-2, 1). In total, Defendants request an award of $89,177.57. *See* Doc. 99-1, 1. Mr. Newburger notes that while his standard hourly rate is $450, Zicker & Associates, P.C. received a preferred rate of $400 because they are a long-time client. (Doc. 99-2, at 9). Mr. Newburger maintains that in light of his hours worked, hourly rate, the complexity of the litigation involved, and "scorched earth" approach of Mr. Francis, the requested $49,078.23 is appropriate. *Id.* at 9, 17. Mr. Newburger further notes that "the only matters on which Defendants were not the prevailing party were non-substantive" as well as Defendants' Motion for Summary Judgment, which Mr. Newburger maintains Mr. Francis only defeated by "making false representations to the Court." *Id.* at 11. Mr. Newburger argues that the overwhelmingly successful result of Defendants' motion weighs in favor of preserving Defendants' request for attorney's fees. *Id.*

Mr. Mikhael D. Charnoff, a Virginia-licensed attorney and founding partner of the law firm Perry Charnoff PLLC, submitted an affidavit on March 28, 2016, testifying to the reasonableness of the hourly rates charged for legal work performed by Mr. Altmiller and Mr. Newburger. (Doc. 99-3, ¶¶ 4, 12-14). Mr. Charnoff asserts that counsel spent 227.7 hours representing Defendants, with Mr. Altmiller and Mr. Newburger spending 87 hours and 124.4

hours respectively, minus 4 uncharged hours. *Id.* at ¶ 17. Mr. Charnoff found the hourly fees of $400 for Mr. Newburger and $385 for Mr. Altmiller reasonable and consistent with the hourly rates charged for "handling work like this litigation" and were "in-line with the hourly rates charged by other attorneys in Northern Virginia with similar years of experience for similar work." *Id.* at ¶ 27. Mr. Charnoff further asserted that in his opinion, "all the time and labor expended performing legal work on behalf of the Defendants was both necessary and reasonable to defend the litigation." *Id.* at ¶ 19. According to Mr. Charnoff's calculation, this resulted in $48,160 in attorney's fees from Mr. Newburger and $33,495 in attorney's fees for Mr. Altmiller (not including funds for the law firm Pesner Kawamoto). *Id.* at ¶ 18. Mr. Charnoff stated that he believed the appropriate attorneys' fees incurred by Defendants totaled $84,752, and were necessary, reasonable, and below the prevailing market rates in Northern Virginia. *Id.* at ¶ 34. Mr. Charnoff also provided the Court with reference to the Laffey Matrix and the "Vienna Metro Matrix" in support of his determination. *Id.* at ¶¶ 31-33.

The Court finds Mr. Charnoff's affidavit and representations credible, and adopts his calculation of Defendants' reasonable hours and time spent in this case following September 30, 2015. The lodestar figures for each Defendant, based on a reasonable number of hours worked at a reasonable hourly rate, are broken down as follows:

| Counsel | Reasonable Hours Worked | Hourly Rate | Amount of Fees and Costs |
|---|---|---|---|
| Mr. Altmiller | 87 | $385.00 | $33.495.00 |
| Mr. Newburger | 124.4 | $400.00 | $48,160.00 |
| Pesner Kawamoto Firm[2] | 16.3 | $190.00 | $3,097 |
| Total | 227.7 | NA | $84,752.00 |

---

[2] Mr. Altmiller's affidavit states that "to minimize my clients' fees" Mr. Altmiller had numerous tasks performed by his associate, Joshua A. Morehouse. (Doc. 99-1, 3).

The Court finds that none of the twelve *Barber* factors serve to alter the fee awards set forth above. First, the time and labor expended has already been properly determined by the Court. Second, both Mr. Altmiller and Mr. Newburger acknowledge in their respective briefs the novelty and difficulty of the questions raised as well as the skills required did not warrant adjustment of the fees. (Doc. 99-1, 6-7; Doc. 99-2, 8-9). Mr. Charnoff stated that the litigation "required appropriate skills and trial experience, but did not require any deviation in the value of the legal services performed." (Doc. 99-3, 3). Mr. Charnoff did assert that the "undesirability of the case within the legal community" dictated a mild increase in the value of the legal services performed, reasoning that FDCPA cases are often "nuisance matters crafted to settle to avoid costs of defense." *Id.* at 7. However, the Court is unconvinced that the nature of litigating FDCPA claims categorically warrant increased attorney's fees.

Mr. Charnoff further stated that he did not believe any of the other factors, including opportunity cost, customary fees, or the nature and length of the professional relationship between the attorneys and the client required adjustment of the initial lodestar figure, and also that the total legal fees charged to successfully defend the litigation was both necessary and reasonable." *Id.* at 5-6. Both Mr. Altmiller and Mr. Newburger also highlight the overwhelmingly meritorious results for Defendants in this litigation. (Doc. 99-1, 8-9; Doc. 99-2, 10-11). Furthermore, Mr. Charnoff's affidavit reveals similar attorneys' fees for similar cases. (Doc. 99-3, ¶ 34). Defendants considered none of the other factors significant, and the Court agrees.

Therefore, after careful review of Defendants' Statement of Fees and Costs and consideration of the applicable *Barber* factors, the Court finds that an award of attorney's fees and costs totaling $84,752.00, as calculated above, are reasonable and shall be paid by Mr.

Francis. The Court, however, declines to grant Defendants' request that Mr. Francis be barred for practicing in this district until the fees and costs have been paid.

### III. CONCLUSION

For the foregoing reasons, the Court ADOPTS the recommendation contained in Judge Nachmanoff's Report and Recommendation in its entirety because the Court finds that Mr. Francis, in pursing this litigation unilaterally and failing to convey the terms of the September 30, 2015 Settlement Offer to Plaintiff, "multiplie[d] the[se] proceedings . . . unreasonably and vexatiously" within the meaning of § 1927; thus, Defendants are entitled to recover reasonable attorney's fees and costs from that date. Next, the Court finds that an award of attorney's fees and costs totaling $84,752.00 is reasonable and shall be paid by Respondent Mr. Francis. Because the Court finds Defendants' motion for sanctions meritorious, the Court DENIES Respondent's Motion for Sanctions Under Rule 11 in which he claims Defendants' motion is frivolous. Accordingly,

**IT IS HEREBY ORDERED** that the Court **ADOPTS** Judge Nachmanoff's Report and Recommendation (Doc. 97) and **OVERRULES** Mr. Francis' Objection (Doc. 104); it is further

**ORDERED** that Defendants' Motion for Sanctions under 28 U.S.C. § 1927 (Doc. 69) is **GRANTED**; it is further

**ORDERED** that Mr. Francis' Motion for Sanctions under Rule 11 (Doc. 74) is **DENIED**; it is further

**ORDERED** that Mr. Francis is shall to pay Defendants a total of $84,752.00 in reasonable attorney's fees pursuant to 28 U.S.C. §1927. Specifically, Mr. Francis is directed to pay a total $33,495.00 to John C. Altmiller, $3,097 to Pesner Kawamoto law firm, and $48,160.00 to Manuel H. Newburger. The Court will enter a Rule 58 Final Judgment in favor of $33,495.00 to John C.

27

Altmiller, $3,097 to Pesner Kawamoto law firm, and $48,160.00 to Manuel H. Newburger against

Ernest Francis.

**IT IS SO ORDERED.**

ENTERED this 31st day of August, 2016.

/s/ with permission of GBL

**Gerald Bruce Lee**
**United States District Judge**

Alexandria, Virginia
8 / 31 / 16